EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nilda Rodríguez Vázquez<br><br>Recurrida<br><br>v.<br><br>Hospital Español Auxilio Mutuo<br><br>Peticionario<br>_____<br><br>Alexander Santana Marrero, Dinorah Burgos Luccioni y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Hospital Español Auxilio Mutuo<br><br>Peticionario | Certiorari<br><br>2025 TSPR 55<br><br>215 DPR ___ |

Número del Caso:  AC-2023-0109
                  cons. con AC-2024-0031


Fecha:  21 de mayo de 2025


Tribunal de Apelaciones:

    Panel VI


<u>AC-2023-0109</u>

Representantes legales de la parte peticionaria:

    Lcdo. Lloyd Isgut Rivera
    Lcda. María Elisa Echenique Arana


Representante legal de la parte recurrida:

    Lcdo. Segundo Meléndez Zayas

AC-2024-0031

Representantes legales de la parte peticionaria:

    Lcdo. Lloyd Isgut Rivera
    Lcda. María Elisa Echenique Arana


Representante legal de la parte recurrida:

    Lcdo. Julio M. Marcano López


Materia:  Procedimiento Civil y National Labor Relations Act – Falta de jurisdicción del tribunal estatal para atender la reclamación de unos obreros cuando se trata de alegaciones de una práctica ilícita bajo la ley federal de Relaciones de Trabajo.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nilda Rodríguez Vázquez<br><br>Recurrida<br><br>v.<br><br>Hospital Español Auxilio Mutuo<br><br>Peticionario<br>_____<br>Alexander Santana Marrero, Dinorah Burgos Luccioni y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Hospital Español Auxilio Mutuo<br><br>Peticionario | AC-2023-0109<br><br>cons. con<br><br>AC-2024-0031 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Nuevamente tenemos la responsabilidad de auscultar si los tribunales de Puerto Rico ostentamos jurisdicción para atender la reclamación de unos obreros que solicitan un remedio al amparo de legislación local, aunque de las alegaciones se pudiera argumentar que estamos ante una práctica ilícita de trabajo bajo la ley federal de Relaciones del Trabajo. De forma similar a cuando resolvimos <u>González v. Mayagüez Resort &</u>

Casino, infra, no se trata, pues, de pasar juicio sobre los méritos de la reclamación en sí, sino de precisar si el Tribunal de Primera Instancia está en posición de así hacerlo.

Por los fundamentos que expondremos a continuación, resolvemos en la negativa. En vista de que el Tribunal de Primera Instancia carece de jurisdicción, desestimamos los casos consolidados de epígrafe. El Congreso de Estados Unidos ocupó el campo en cuanto a las conductas que constituyen prácticas ilícitas del trabajo y delegó a la Junta Nacional de Relaciones del Trabajo la jurisdicción exclusiva para resolver este tipo de controversias.

I

La controversia que nos convoca tuvo su génesis en dos demandas presentadas ante el Tribunal de Primera Instancia. La primera de ellas se radicó el 24 de mayo de 2023 por el Sr. Alexander Santana Marrero, la Sra. Dinorah Burgos Luccioni y la Sociedad Legal de Bienes Gananciales compuesta por ambos; estos reclamaron despido injustificado y represalias contra el Hospital Español Auxilio Mutuo (Hospital). Al día siguiente, 25 de mayo de 2023, la Sra. Nilda Rodríguez Vázquez presentó una segunda demanda, también sobre despido injustificado y represalias, contra el Hospital.

Según surge del expediente, el señor Santana Marrero y la señora Rodríguez Vázquez (recurridos) laboraron por varios años para el Hospital. Sin embargo, ambos alegaron que fueron despedidos en represalias por haber participado como testigos en una querella que se presentó en contra de su patrono ante el Departamento de Salud. A grandes rasgos, la querella denunció

que el Hospital contrató estudiantes de anestesia para ejercer las funciones de un enfermero anestesista licenciado, en contra de lo estipulado en el Reglamento para la Construcción, Operación, Mantenimiento y Licenciamiento de los Hospitales en Puerto Rico, Reglamento Núm. 9184, Departamento de Salud, 1 de julio de 2020. Reclamaron que, contrario a lo que les manifestó el Hospital, su despido no se debió a una alegada violación de la *Health Insurance Portability and Accountability Act of 1996* (Ley HIPAA), Pub. L. No. 104-191, 100 Stat. 1936 (1996), por supuestamente haber circulado expedientes confidenciales de pacientes, sino que esto fue un mero pretexto para ocultar las represalias por el testimonio vertido el 20 de julio de 2022.

El señor Santana Marrero presentó su reclamo al amparo de la Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial (Ley de Represalias), Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 *et seq.*, y de la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq*. En su demanda, indicó que comenzó a trabajar para el Hospital en el mes de julio del año 2002 y, desde entonces, fue miembro de la Unidad Laboral de Enfermeros y Empleados de la Salud (ULEES), que lo representaba sindicalmente ante su patrono. Asimismo, alegó que el 22 de agosto de 2022 fue despedido ilegalmente. Específicamente, dijo que su destitución constituyó un acto en represalias producto de su participación como testigo en la Querella Núm. Q-22-03-004 presentada por la ULEES ante el Departamento de Salud, en contra del Hospital. En la

alternativa, solicitó que se determinara que su despido fue sin justa causa. Por todo lo anterior, solicitó los remedios reconocidos en las legislaciones mencionadas.

Por su parte, la señora Rodríguez Vázquez también presentó su reclamo al amparo de la Ley de Represalias, supra, y la Ley sobre Despidos Injustificados, supra. En su caso, sostuvo que trabajó para el Hospital como enfermera anestesista desde el 10 de enero de 2005 hasta el 19 de agosto de 2022, cuando fue despedida injustificadamente y en represalia por haber promovido que la ULEES presentara una querella ante el Departamento de Salud en contra del Hospital y por haber comparecido como testigo de la unión durante el proceso adjudicativo de la querella. Igual que el señor Santana Marrero, solicitó al foro primario las indemnizaciones provistas por la Ley Núm. 80, supra, y la Ley Núm. 115, supra.

En respuesta, el Hospital presentó —en ambas demandas— una *Moción de Desestimación* bajo la Regla 10.2(1) de Procedimiento Civil, 32 LPRA Ap. V, por falta de jurisdicción sobre la materia. De acuerdo con el Hospital, las dos reclamaciones se encuentran bajo la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo (Junta Nacional, National Labor Relations Board o NLRB). Esto se debe a que, según su interpretación, las alegaciones se basan en despido injustificado y represalias por conductas que son o podrían ser actos de práctica ilícita según la *National Labor Relations Act*, infra.

El 1 de agosto de 2023, la señora Rodríguez Vázquez presentó una *Oposición a Moción de Desestimación Bajo la Regla*

*10.2 de Procedimiento Civil por Falta de Jurisdicción sobre la Materia*. En su escrito, negó haber alegado que fue despedida en violación de los derechos protegidos por la *National Labor Relations Act*, <u>infra</u>. En cambio, sostuvo que su reclamación se fundamentaba en violaciones de la legislación laboral local, por lo que no podía ser dilucidada ante la NLRB. En síntesis, recalcó que la causa aducida por su patrono para su despido fue un subterfugio para despedirla por haber testificado en contra del Hospital en el mencionado proceso adjudicativo.

Dos días más tarde, el 3 de agosto de 2023, el señor Santana Marrero también se opuso a la moción dispositiva presentada por el Hospital. Al así hacerlo, expuso que las alegaciones en la demanda revelaban que su intervención como testigo en la querella no tuvo el propósito de ayudar o proteger los intereses de los miembros del sindicato, según requiere la *National Labor Relations Act*, por lo que negó la aplicación de la doctrina de campo ocupado frente a las causas de acción que instó en el pleito.

Sobre estas comparecencias, el Hospital —en cada caso— presentó *Réplica a Oposición a Moción de Desestimación*. En resumen, reiteró los argumentos expuestos en su moción de desestimación. Esto es, insistió en que el Tribunal de Primera Instancia no tenía jurisdicción para disponer de la reclamación presentada por tratarse de un asunto sobre el cual la Sec. 10 de la *National Labor Relations Act*, <u>infra</u>, confería jurisdicción exclusiva a la Junta Nacional de Relaciones del Trabajo. Según su interpretación, de las alegaciones presentadas por el señor Santana Marrero y la señora Rodríguez

Vázquez se desprendía que sus reclamos estaban basados en que ambos sufrieron represalias tras su participación en gestiones sindicales de la ULEES, lo que de ser verdad estaría prohibido por considerarse una práctica ilícita de trabajo según la Sec. 8 de la *National Labor Relations Act*, <u>infra</u>.

Para sostener sus alegaciones, el Hospital trajo a consideración que, previo a la presentación de estas demandas, el señor Santana Marrero y la señora Rodríguez Vázquez, mediante la ULEES, presentaron cargos en su contra ante el NLRB por los mismos hechos.

El 23 de agosto de 2023, la señora Rodríguez Vázquez presentó una *Dúplica a Réplica a Oposición a Moción de Desestimación*. En esta ocasión, argumentó que su reclamación ante el foro primario podía subsistir de forma independiente a la que se presentó ante el NLRB. Además, adujo que una reclamación al amparo de las leyes locales es distinguible ya que requiere de conductas diferentes a las de una reclamación basada en las secciones 7 y 8 de la *National Labor Relations Act*, <u>infra</u>. Sostuvo que "si bien […] es unionada, sus gestiones en su carácter personal fueron para denunciar una violación por el Hospital de leyes y reglamentos de salubridad, que es el campo industrial del patrono, y no se trata de una práctica ilícita de trabajo"; y que "no acudió a solicitar aumentos de sueldos y otros beneficios sino a defender los reglamentos de salubridad que le cobijan". <u>Ap. del certiorari AC-2023-109</u>, pág. 97.

Evaluados los reclamos de todas las partes, el Tribunal de Primera Instancia emitió dos resoluciones —una en cada caso— en

la que determinó No Ha Lugar a la *Moción de Desestimación* presentada por el Hospital. En cuanto al reclamo presentado por el señor Santana Marrero, el foro primario sostuvo que las alegaciones de la demanda requerían determinar si el señor Santana Marrero fue objeto de represalias o si en realidad fue despedido sin justa causa. Entendió que la reclamación en cuestión no estaba fundada en violaciones de las Secs. 7 y 8 de la *National Labor Relations Act*, <u>infra</u>, sino en violaciones de la Ley sobre Despidos Injustificados, <u>supra</u>, y la Ley de Represalias, <u>supra</u>. Ultimó que el procedimiento presentado ante el Departamento de Salud en contra del Hospital no estaba dirigido a adelantar negociación colectiva, procurar ayuda mutua o la protección a los empleados unionados del Hospital. Consecuentemente, le concedió al Hospital un término para que contestara la demanda.

A similar conclusión llegó el Tribunal de Primera Instancia en el caso de la señora Rodríguez Vázquez al resolver que, según las alegaciones, la demandante fue despedida de su empleo como represalia por prestar testimonio contra el Hospital y producir información sensitiva y/o confidencial. El foro primario dispuso: "[c]ontrario a lo reclamado por el Hospital Español Auxilio Mutuo, de los hechos bien alegados en la Demanda (SUMAC 1) no surge que la demandante Nilda Rodríguez Vázquez estuviera participando en una actividad que pueda colegirse y/o interpretarse como dirigida a su derecho a organizarse colectivamente y/o a negociar colectivamente - actividad que recae bajo la exclusiva jurisdicción de la Junta Nacional de

Relaciones del Trabajo". Ap. del certiorari AC-2023-109, pág. 102.

Inconforme, el Hospital acudió ante el Tribunal de Apelaciones. Alegó que sería imposible para el foro de primera instancia emitir una determinación sin pasar juicio sobre asuntos que son de la jurisdicción exclusiva del NLRB. No obstante, el Tribunal de Apelaciones denegó la expedición de los recursos de *certiorari* porque consideró que no estaban presentes los factores necesarios para acogerlos. Resaltamos la *Sentencia* emitida en el caso de la señora Rodríguez Vázquez:

> Evaluadas las alegaciones presentadas en la demanda a la luz del derecho expuesto, entendemos que el TPI puede pasar juicio sobre las controversias que presenta este caso relacionadas a si medió justa causa para el despido de la Sra. Rodríguez Vázquez sin inmiscuirse en asuntos que son de la jurisdicción exclusiva de la Junta. La reclamación de la Sra. Rodríguez Vázquez no está fundamentada en violaciones a las Secciones 157 y 158 del NLRA, supra, sino en violaciones a la Ley Núm. 80 de 30 de mayo de 1976, supra, y la Ley Núm. 115-1991, supra, por lo que el TPI tiene jurisdicción para atenderla. Ap. del certiorari AC-2023-109, pág. 138.

Tras la denegatoria de las solicitudes de reconsideración, el Hospital instó ante este Tribunal dos recursos de apelación. En suma, la contención del Hospital es que los foros hermanos incidieron al resolver que el Tribunal de Primera Instancia tiene jurisdicción para atender la reclamación de los recurridos, debido a que realizaron su análisis a la luz del remedio solicitado, aunque la jurisprudencia interpretativa de la Sec. 10 de la *National Labor Relations Act*, infra, claramente establece que el análisis es a raíz del tipo de conducta involucrada.

Después de varios incidentes procesales, acogimos los recursos como solicitudes de *certiorari,* expedimos en reconsideración y ordenamos su consolidación. Posteriormente, los recurridos nos presentaron sus posturas en las cuales solicitaron que ratificáramos las determinaciones de los foros inferiores.

Tanto el señor Santana Marrero como la señora Rodríguez Vázquez negaron haber alegado que su despido fue en violación de los derechos protegidos por la Sec. 7 de la mencionada ley federal o producto de prácticas ilícitas del trabajo prohibidas por la Sec. 8, <u>infra</u>. Asimismo, expresaron que, si bien reconocen que acudieron ante la ULEES para presentar una querella contra el Hospital, lo hicieron en estricto cumplimiento del Código de Ética que rige su profesión y demás reglamentos del Estado. Indicaron que estas normas los obligan a velar por la seguridad de sus pacientes en todo momento y que por esta razón tuvieron que acudir a la Unión, pues el Hospital contrató estudiantes para desempeñar funciones especializadas que solo un enfermero licenciado tiene el conocimiento para ejecutar. Por último, adujeron que su participación se limitó a ser testigos en la querella ante el Departamento de Salud y que ello no fue en defensa de actividades concertadas de los empleados unionados, sino de los pacientes de la clínica hospitalaria.

Expuesto detenidamente este trasfondo, y con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

II

**A. *Falta de jurisdicción sobre la materia y la Moción de desestimación bajo la Regla 10.2(1) de Procedimiento Civil***

Nuestro ordenamiento procesal civil avala que un demandado solicite la desestimación de la reclamación judicial cuando de las alegaciones de la demanda surja que alguna defensa afirmativa derrotará la pretensión del demandante. Costas Elena y otros v. Magic Sport y otros, 213 DPR 523 (2024); Eagle Sec. Police, Inc. v. Dorado, 211 DPR 70, 78 (2023). Por ello, un demandado puede solicitar la desestimación total de la reclamación, incluso antes de contestar propiamente la demanda, al amparo de la Regla 10.2 de Procedimiento Civil, supra. Esta norma establece que una parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes: **(1) falta de jurisdicción sobre la materia**; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable. (Negrillas suplidas). Costas Elena y otros v. Magic Sport y otros, supra; González Méndez v. Acción Soc., 196 DPR 213, 234 (2016).

Como vemos, la primera de las defensas reconocidas por la Regla 10.2 de Procedimiento Civil, supra, es la falta de jurisdicción sobre la materia. Su importancia estriba en que, al momento de adjudicar cualquier controversia, los tribunales deben tener jurisdicción sobre la materia en cuestión y sobre las partes litigiosas. Cobra Acquisitions, LLC v. Mun. de

Yabucoa, 210 DPR 384, 394 (2022); Shell v. Srio. Hacienda, 187 DPR 109, 122 (2012). Recordemos que por jurisdicción nos referimos a la autoridad misma que posee un tribunal para considerar y decidir casos o controversias. Cobra Acquisitions, LLC v. Mun. de Yabucoa, supra, pág. 394. De un tribunal dictar una sentencia sin tener jurisdicción, su decreto será jurídicamente inexistente o *ultra vires*. Maldonado v. Junta de Planificación, 171 DPR 46, 55 (2007).

Ante esta realidad, año tras año reiteramos que los tribunales deben ser celosos guardianes de su jurisdicción; que los asuntos de este tipo son privilegiados; que deben ser atendidos con prelación, y que no existe discreción para asumir jurisdicción donde no la hay. Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254, 268 (2018); Horizon v. Jta. Revisora, RA Holdings, 191 DPR 228, 234 (2014); Lozada Sánchez v. JCA, 184 DPR 898, 994 (2012). "Por definición, un *requisito jurisdiccional* es aquel que se debe cumplir antes de que el tribunal pueda conocer del pleito". (Énfasis en el original). Ruiz Camilo v. Trafon Group., Inc., supra, pág. 268; I. Rivera García, *Diccionario de términos jurídicos*, 2da ed. rev., Orford, Ed. Equity, 1985, pág. 244.

Hemos sido enfáticos en que la ausencia de jurisdicción sobre la materia: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la

jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o del mismo tribunal. MCS Advantage, Inc. v. Fossas Blanco y otros, 211 DPR 135, 145 (2023), citando a Beltrán Cintrón *et al*. v. ELA *et al.*, 204 DPR 89, 101-102 (2020), que a su vez cita a Fuentes Bonilla v. ELA *et al.*, 200 DPR 364, 372-373 (2018).

Por esta razón, el aspecto jurisdiccional supone ser el primer factor que los foros adjudicativos consideren ante toda situación jurídica presentada ante sí, pues este incide directamente sobre el poder para adjudicar la controversia. Torres Alvarado v. Madera Atiles, 202 DPR 495, 500 (2019); Ruiz Camilo v. Trafon Group, Inc., supra, pág. 268; Horizon v. Jta. Revisora, RA Holdings, supra, págs. 233-234.

En consecuencia, los juzgadores deben examinar cualquier reclamo jurisdiccional de forma rigurosa y, de determinar que no poseen jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. Torres Alvarado v. Madera Atiles, supra, pág. 501; Ruiz Camilo v. Trafon Group, Inc., supra, pág. 269; S.L.G. Szendrey-Ramos v. F. Castillo, 169 DPR 873, 883 (2007).

En sintonía, la Regla 10.8(c) de Procedimiento Civil, supra, dispone que: "[s]iempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito". Según esta disposición, se debe desestimar una reclamación por ser de la jurisdicción de una agencia administrativa o de la esfera federal. González v. Mayagüez Resort & Casino, 176 DPR

848, 855 (2009); R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. Lexisnexis, 2017, Sec. 2608, pág. 311. Es al amparo de esta disposición que se ordena a los tribunales locales desestimar una acción civil cuando surge la falta de jurisdicción sobre la materia ante el foro aludido. González v. Mayagüez Resort & Casino, supra, pág. 855.

Como esbozamos anteriormente, una de las instancias en las que un foro adjudicativo carece de jurisdicción es cuando ocurre la ocupación del campo por parte del gobierno federal.

B. *Doctrina de campo ocupado*

La doctrina de campo ocupado proviene directamente de la Cláusula de Supremacía contenida en la Constitución de Estados Unidos. Específicamente, el Art. IV de la Carta Magna federal expresa: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; [...] shall be the Supreme Law of the Land". Art. VI, Const. EE. UU., LPRA, Tomo 1, ed. 2016, págs. 168-169 (Edición en inglés). De esta manera, desde el propio nacimiento de la nación, se le otorgó al Congreso de Estados Unidos la facultad de concederle jurisdicción exclusiva al Gobierno federal en ciertos asuntos medulares para el bienestar del país.

El efecto de este precepto es que el Congreso, en virtud de la Cláusula de Supremacía, puede ocupar el campo sobre un asunto federal y excluir la regulación local. Lilly del Caribe v. Mun. de Carolina, 210 DPR 306, 318 (2022). Y es que, como norma general, los tribunales estatales tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes

estatales y jurisdicción concurrente con los tribunales federales para atender asuntos que surjan al palio de las leyes federales. Tafflin v. Levitt, 493 U.S. 455, 459-460 (1990); González v. Mayagüez Resort & Casino, supra, pág. 856. Sin embargo, en aquellas áreas en las cuales el interés federal es tan dominante que no debe existir reglamentación estatal independiente, o en circunstancias en las que la reglamentación estatal podría producir un resultado incompatible con los objetivos del Gobierno federal, es necesario utilizar la doctrina del campo ocupado para evitar conflictos regulatorios entre los dos gobiernos y fomentar la uniformidad. Lilly del Caribe v. Mun. de Carolina, supra, pág. 318.

El Gobierno federal establece su jurisdicción exclusiva en determinado campo cuando el Congreso dispone expresamente para ello, cuando la intención clara de la ley es privar a los tribunales estatales de la autoridad sobre ese asunto federal, o cuando la reglamentación de un área específica es tan abarcadora que no cabe duda de que la intención federal fue reglamentar la totalidad del área. Lilly del Caribe v. Mun. de Carolina, supra, pág. 318; Mun. de Peñuelas v. Ecosystems, Inc., 197 DPR 5, 14-15 (2016); Rodríguez v. Overseas Military, 160 DPR 270, 282 (2003).

Los problemas jurisdiccionales bajo la doctrina de campo ocupado se componen de dos vertientes particulares: legislativa y adjudicativa. González v. Mayagüez Resort & Casino, supra, pág. 857. En primer lugar, el concepto de jurisdicción legislativa versa sobre quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación.

Rodríguez v. Overseas Military, supra, pág. 279. En segundo lugar, la jurisdicción judicial se refiere a cuál tribunal, ya sea estatal o federal, está autorizado para resolver las controversias que se susciten dentro del enclave. Íd. En cuanto a esto, el Tribunal Supremo de Estados Unidos ha expresado: "It is clearly within Congress powers to establish an exclusive federal forum to adjudicate issues of federal law in a particular area that Congress has the authority to regulate under the Constitution". Longshoremen v. Davis, 476 U.S. 380, 388 (1986).

En fin, cuando estamos en un campo que ha sido válidamente ocupado por el Gobierno de Estados Unidos, cualquier ley estatal que contravenga una ley federal es nula. Lilly del Caribe v. Mun. de Carolina, supra, pág. 319. A pesar de lo anterior, hay instancias en las que un estado puede reglamentar actividades de carácter marginal (*peripheral*) a la ley federal. Belknap, Inc. v. Hale, 463 U.S. 491, 498 (1983); Farmer v. Carpenters, 430 U.S. 290, 296 (1977); San Diego Unions v. Garmon, 359 U.S. 236, 244 (1959). Para que exista esta jurisdicción estatal, la conducta reglamentada por el estado debe ser de alto interés público, o tratarse de un asunto profundamente arraigado a su gobierno. Íd. No obstante, los estados solo pueden reglamentar en aquellos casos en donde no surja una clara intención del Congreso federal de suprimir dicha jurisdicción estatal. Íd.

C. *National Labor Relations Act*

El Congreso tiene autoridad para regular las relaciones obrero-patronales en virtud de la Cláusula de Comercio de la Constitución de Estados Unidos. Art. I, Const. EE. UU., LPRA,

Tomo 1, ed. 2023, pág. 167; González v. Mayagüez Resort & Casino, supra, pág. 856; Longshoremen v. Davis, supra, pág. 388; San Diego Unions v. Garmon, supra, pág. 240. Véase, además, D. Fernández y C. Romany, *Derecho Laboral: Casos y Materiales*, Río Piedras, Ed. U.P.R., 1987, T. I, pág. 53.

En virtud de esta autoridad, se aprobó la *National Labor Relations Act* (NLRA), Pub. L. No. 74-198, 49 Stat. 449 (1935), 29 U.S.C.A. secs. 151-169, también conocida como la Ley Wagner. Esta pieza marcó un cambio trascendental en las políticas públicas laborales estadounidenses, puesto que la noción imperante de ese entonces era que las actividades sindicales fomentaban "conspiraciones" y que las huelgas solo producían restricciones irrazonables al comercio. Sin embargo, esto comenzó a cambiar con la promulgación de la NLRA, ya que en la misma se hizo una declaración nacional que establecía la legitimidad de la sindicalización y alentaba la práctica de la negociación colectiva. Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters, 436 U.S. 180, 190 (1978).

En su declaración de política pública, la NLRA favorece la absoluta libertad de asociación de los empleados para mejorar sus condiciones laborales, fomenta la negociación colectiva, garantiza el derecho a celebrar huelgas y piquetes pacíficos, e impulsa el intercambio de bienes en el comercio interestatal. Sec. 1 de la NLRA, 29 U.S.C.A. sec. 151. Posteriormente, la NLRA fue enmendada por la *Labor Management Relations Act of 1947*, Pub. L. No. 80-101, 61 Stat. 136 (1947), 29 U.S.C.A. sec. 141-197, comúnmente conocida como la Ley Taft-Hartley. Adicional a lo reconocido en la NLRA, esta enmienda otorgó a

los empleados el derecho de abstenerse, si así desean, de participar en actividades sindicales y estableció los deberes de las partes privadas en las negociaciones colectivas, entre otras cosas. Sec. 7 de la NLRA, 29 U.S.C.A. sec. 157. Su propósito principal es alentar a los trabajadores y a la gerencia a respetar los acuerdos de negociación colectiva y evitar boicots secundarios. Sec. 1 de la Ley Taft-Hartley, 29 U.S.C.A. sec. 141.

En lo pertinente a la controversia que nos ocupa, la Sec. 101 de la Ley Taft-Hartley, supra, enmendó la Sec. 7 de la NLRA para que leyera como sigue:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title. 29 U.S.C.A. sec. 157.

Como vemos, la Sec. 7 de la NLRA, según enmendada por la Ley Taft-Hartley, protege los derechos de los empleados a organizarse, a constituir, afiliarse o ayudar a organizaciones obreras, a negociar colectivamente a través de representantes seleccionados por ellos mismos, y a dedicarse a otras actividades concertadas con el propósito de ayudarse y protegerse mutuamente. En armonía, la Sec. 8 de esta ley prohíbe a los empleadores y sindicatos llevar a cabo ciertas prácticas ilícitas de trabajo como interferir en el ejercicio de los derechos garantizados en el párrafo anterior, obstruir la formación de organizaciones laborales, o **despedir a un empleado**

**por radicar cargos, suministrar información o testificar en su**

**contra**. 29 U.S.C.A. sec. 158(a)(1), (2) y (4).

Para velar por el cumplimiento de esta ley se creó el NLRB. Sec. 3 de la NLRA, 29 U.S.C.A. sec. 153. Sobre esta Junta Nacional, la Sec. 10(a) de la NLRA dispone:

PREVENTION OF UNFAIR LABOR PRACTICES

(a) Powers of Board generally
The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided*, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith. 29 U.S.C.A. sec. 160(a).

Como si fuera poco, la Sec. 10 de la NLRA, 29 U.S.C.A. sec. 160, reconoce la jurisdicción exclusiva del NLRB para resolver controversias que, según esta ley, involucran una práctica ilícita del trabajo. González v. Mayagüez Resort & Casino, supra, pág. 858; Belknap, Inc. v. Hale, supra, pág. 498; Garner v. Teamsters Union, 346 U.S. 485 (1953). Entiéndase, el NLRB tiene jurisdicción exclusiva para resolver controversias que planteen, por ejemplo, que un patrono restringió a sus empleados en el ejercicio de sus derechos reconocidos en la Sec. 7 de la NLRA, que obstruyó la formación de organizaciones laborales en su empresa, o que **despidió a un trabajador que** —en busca de proteger su ambiente laboral—

**testificó en su contra y/o presentó una querella**. Véase, González v. Mayagüez Resort & Casino, supra, págs. 858-859.

En el ejercicio de su autoridad discrecional, el Congreso federal extendió a Puerto Rico la aplicación de esta ley, así como la jurisdicción exclusiva del NLRB para atender las controversias que de ella se susciten. González v. Mayagüez Resort & Casino, supra, pág. 857; Rivera v. Sec. Nat. Life Ins. Co., 106 DPR 517, 522 (1977). Por ello, en el próximo apartado nos adentraremos en un análisis jurisprudencial que nos ilustre cómo esta legislación —sobre todo el aspecto de la jurisdicción exclusiva de la Junta Nacional— se ha aplicado en nuestra jurisdicción y en la federal.

### D.   *Jurisdicción exclusiva de la Junta Nacional*

Desde hace más de 50 años, el Tribunal Supremo de Estados Unidos reconoció la aplicación de la doctrina de campo ocupado a las prácticas ilícitas del trabajo enumeradas en la referida Sec. 8 de la NLRA. Machinists v. Wisconsin Emp. Rel. Comm'n, 427 U.S. 132 (1976); San Diego Unions v. Garmon, supra. Lo anterior incluye, por supuesto, las situaciones en las que la regulación estatal entra en conflicto con la intención del Congreso, pues existe una necesidad de ofrecer a los trabajadores un remedio efectivo a través de un foro adecuado, mientras se uniforman varios aspectos trascendentales de esta actividad y se evitan conflictos en la interpretación de esta normativa obrero-patronal. San Diego Unions v. Garmon, supra, págs. 242-243. En otras palabras, el Máximo Foro federal reafirmó que la jurisdicción exclusiva del NLRB se da en aquellos casos en que la actividad particular a juzgar se

encuentre regulada o protegida por la Sec. 7, supra, o que constituya una práctica ilícita del trabajo al amparo de la Sec. 8. Longshoremen v. Davis, supra, pág. 388; González v. Mayagüez Resort & Casino, supra, pág. 859.

Según el Tribunal Supremo de Estados Unidos, para poder determinar si un foro local puede adjudicar una controversia bajo la NLRA, enmendada por la Ley Taft-Hartley, hay que examinar si la controversia es idéntica o diferente de la que ha podido ser presentada ante el NLRB. Sears, Roebuck & Co. v. Carpenters, supra, págs. 200-201. "Precisamente cuando la conducta alegada está sujeta a ser sancionada por la Ley Taft-Hartley es que opera la doctrina de jurisdicción exclusiva de la Junta Nacional". González v. Mayagüez Resort & Casino, supra, pág. 862.

Es importante destacar que este análisis de desplazamiento —que reconoce jurisdicción exclusiva al NLRB— se efectúa en consideración **al tipo de conducta involucrada, y no la naturaleza del remedio solicitado**. González v. Mayagüez Resort & Casino, supra, pág. 862, citando a Díaz Arroyo v. Hosp. Dr. Susoni, 169 DPR 53, 64 (2006) (sentencia), Opinión de Conformidad de la Juez Asociada Señora Rodríguez Rodríguez, a la que se unió el Juez Presidente Señor Hernández Denton. Véase, además, Plumbers' Union v. Borden, 373 U.S. 690, 693-694 (1963); San Diego Unions v. Garmon, supra, págs. 244-245; Lognshoremen's v. Davis, supra, pág. 394.

En San Diego Unions v. Garmon, supra, pág. 245, el Tribunal Supremo federal expresó: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal

courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted". Esto se debe a que el desplazamiento procura evitar la interferencia estatal con la forma y manera en que la Junta Nacional pone en vigor el esquema integrado de reglamentación establecido por la NLRA. Golden State Transit Corp. v. Los Angeles, 475 U.S. 608, 613 (1986) ("[I]s intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA"). De esa forma, cuando los hechos alegados por el demandante son (**o se podrían argumentar que son**) actos de práctica ilícita según la NLRA, ni los tribunales estatales ni los federales tienen jurisdicción. Chamber of Com. of U.S. v. Brown, 554 U.S. 60, 65 (2008). Por esta particularidad, la doctrina de campo ocupado de la NLRA es más abarcadora que la típica regla general de desplazamiento. "Preemption under the NLRA is unusual, though, because our precedent maintains that the NLRA preempts state law even when the two only arguably conflict". Glacier Northwest, Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174, 597 U.S. 771, 776 (2023).

Al cabo, el análisis utilizado por el Tribunal Supremo de Estados Unidos invita a los foros judiciales a apreciar si la parte que sostiene la prelación de la NLRA constató que los hechos alegados por el demandante son o se podría argumentar que son actos de práctica ilícita según la NLRA. De ser así, los tribunales deberán aplicar la doctrina de campo ocupado y

desestimar la reclamación. Solo si la Junta Nacional decide que la conducta no está protegida o prohibida por la NLRA, es que los tribunales locales posteriormente podrían justipreciar la controversia. Íd., págs. 776-777, citando a Longshoremen v. Davis, supra, pág. 394.

Por nuestra parte, en varias ocasiones hemos tenido que auscultar nuestra propia jurisdicción para determinar si cierta reclamación laboral cae bajo la jurisdicción exclusiva del NLRB. Por ejemplo, en Vargas v. Molinos Nacionales, Inc., 134 DPR 919 (1993), nos enfrentamos a una reclamación de indemnización por despido injustificado, discrimen sindical e infracción al deber de justa representación. Desestimamos por entender que las alegaciones contenidas eran materia de exclusiva jurisdicción de la Junta Nacional y correspondía a dicha entidad, en primera instancia, pasar juicio sobre la controversia. Concluimos que las alegaciones expuestas describían una práctica ilícita regulada por la ley federal, pues la demanda alegó específicamente que los demandados discriminaron perjudicialmente a los demandantes por sus actividades obreras y no los reclutaron nuevamente por su afiliación a la Unión de Trabajadores. Íd., pág. 926.

Asimismo, en Díaz Arroyo v. Hosp. Dr. Susoni, supra (sentencia), atendimos una demanda en la cual se reclamó indemnización por daños y perjuicios por despido discriminatorio, producto de activismo sindical. Nuevamente desestimamos por falta de jurisdicción, ya que una de las cuestiones a adjudicar era si el patrono incurrió en un

discrimen sindical, materia que es de la exclusiva jurisdicción del NLRB.

Por último, en <u>González v. Mayagüez Resort & Casino</u>, <u>supra</u>, el querellante alegó —igual a como aquí hacen los recurridos— despido injustificado al amparo de la Ley sobre Despidos Injustificados y la Ley de Represalias. Según las alegaciones de la querella, el demandante solicitó a su patrono una reunión para plantear varios asuntos relacionados con su trabajo y sus derechos como empleado. Aunque en principio el patrono accedió, el día pautado para la reunión le recriminó la solicitud y sus motivos, y lo despidió. El querellante arguyó en su querella que la razón de su despido fue el "uso válido de su derecho constitucional de participar en actividades concertadas y a reclamar derechos que como empleado le corresponden". <u>González v. Mayagüez Resort & Casino</u>, <u>supra</u>, pág. 852. En respuesta a esas alegaciones, el patrono presentó una moción de desestimación por falta de jurisdicción en la cual alegó que el NLRB tenía jurisdicción exclusiva.

Al atender la controversia, analizamos detenidamente las alegaciones del demandante y entendimos que denunciaban una conducta regulada y catalogada como práctica ilícita al amparo de la Sec. 8 de la NLRA. Por esta razón, desestimamos la querella. Sin importar que los remedios solicitados eran al amparo de estatutos locales, sus alegaciones pretendían dirimir ante nuestros tribunales si su despido fue en represalia por su gestión para reclamar los derechos que le correspondían a él y a sus compañeros. <u>Íd</u>., pág. 863. Así, opinamos:

> Determinar qué constituye una interferencia con una acción concertada protegida y adjudicar los hechos

que configurarían o no dicha práctica ilícita, es jurisdicción exclusiva de la Junta Nacional. **Si hubiera que adjudicar los hechos que configuran la práctica ilícita como paso previo para establecer la jurisdicción exclusiva de la Junta Nacional, se echaría por la borda el desplazamiento que ordena la ley federal.** En efecto, el tribunal incurriría en el contrasentido de intervenir en los méritos de la controversia para decidir entonces que no puede hacerlo. (Negrillas suplidas). González v. Mayagüez Resort & Casino, supra, págs. 863-864.

Con este marco jurídico en mente, pasemos ahora a disponer de la controversia.

### III

El recurso ante nuestra consideración, de forma similar a lo acontecido en González v. Mayagüez Resort & Casino, supra, nos invita a determinar si el Tribunal de Primera Instancia tiene la autoridad para atender la reclamación de unos trabajadores unionados que solicitan un remedio al amparo de la legislación local, por entender que su despido fue en represalias por estos servir de testigos en una querella presentada por la ULEES contra su patrono.

Por su parte, el Hospital suplicó la desestimación de la causa de acción debido a que la reclamación es de la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo. En síntesis, alegó que será imposible para el foro primario emitir una determinación sin pasar juicio sobre asuntos que, en virtud de la doctrina de campo ocupado, son de potestad exclusiva de la Junta Nacional. Le asiste la razón al Hospital, lo que comprobamos al examinar las alegaciones de los recurridos.

En cuanto al despido, la señora Rodríguez Vázquez alegó lo siguiente:

[…].

3. La demandante [Nilda Rodríguez Vázquez] trabajó para el Hospital desde el mes de enero del 2005.

[…].

6. **La demandante Nilda Rodríguez Vázquez es miembro de la Unidad Laboral de Enfermeras(os) y Empleados de la Salud, en adelante "ULEES", organización que la representa sindicalmente ante su patrono el Hospital.**

7. La demandante Nilda Rodríguez Vázquez es enfermera graduada con especialidad en anestesia (RNA) y ejerció dichas funciones en el Hospital Auxilio Mutuo hasta el 20 de agosto de 2022 cuando fue despedida injustamente y como producto de una represalia del patrono.

8. **La demandante Nilda Rodríguez Vázquez en conjunto a otros empleados promovieron que el sindicato que los representa ULEES, instara y presentara ante el Departamento de Salud de Puerto Rico una Querella en contra del Hospital, ya que su patrono tiene contratados estudiantes de anestesia qui[e]nes llevan a cabo funciones que solo pueden ejecutar enfermeros(as) anestesistas licenciados(as) (RNA) como lo es la demandante.**

9. La alegación principal de la Querella ante el Departamento de Salud es que los estudiantes de anestesia ejercen las funciones de atender pacientes solos, sin la supervisión directa de un anestesista y/o de sus superiores, lo que constituye una violación al Reglamento 9184 del Departamento de Salud.

10. La Querella ante el Departamento de Salud lleva el número Q-22-03-004 siendo presentada el 21 de marzo de 2022, por el representante sindical de la demandante. […].

[…].

12. Durante el proceso administrativo el Oficial Examinador celebró una vista, en la cual compelió a la ULEES y al Hospital para que se reunieran y tratar de resolver la controversia. […]. **A dicha reunión comparecieron la demandante Nilda Rodríguez Vázquez, y Alexander Santana Marrero como testigos de la querellante,** funcionarios del Hospital, así como el Lic. Carlos M. Ortiz Velázquez en representación de la querellante y el Lic. José Vélez Gutiérrez, en representación de la querellada.

13. En la reunión el representante legal de la querellante produjo documentos que formaban parte de su expediente profesional, los cuales el representante legal de la querellada, o sea el Hospital, reprodujo. Luego de la reproducción de los documentos el representante legal de la querellante se los mostró a los testigos, la aquí demandante Nilda Rodríguez Vázquez y Alexander Santana Marrero, qui[e]nes por su "expertise" explicaron el contenido de estos.

14. Luego de terminada la reunión, el representante legal del Hospital le planteó al representante legal de la querellante que entre los documentos producidos había algunos que eran hojas clínicas de pacientes, que supuestamente son confidenciales y no había razón alguna para que el abogado de la querellante los tuviese en su poder.

15. Con posterioridad a la reunión entre las partes para discutir la querella, los testigos Rodríguez Vázquez y Santana Marrero fueron citados al Departamento de Recursos Humanos del Hospital donde estuvieron presentes funcionarios del Hospital, [...]. El hospital le informó a Santana Marrero y a Rodríguez Vázquez que había iniciado una investigación para determinar cómo los documentos confidenciales habían llegado a manos del representante legal de la querellante. En dicha ocasión el Hospital le imputó a la demandante Rodríguez Vázquez y al otro testigo ante el Departamento de Salud[,] Santana Marrero, haber tenido en su poder y haber circulado hojas clínicas de pacientes, lo que alegadamente constituye una violación al Health Insurance Portability and Accountability Act of 1996 (Ley HIPAA). El representante legal de la querellante le indicó y les informó a los funcionarios del Hospital, así como a su representante legal [...], que las hojas clínicas de los pacientes que él produjo en la reunión de 20 de junio de 2022, no le habían sido entregadas por los testigos Nilda Rodríguez Vázquez aquí demandante ni por otro testigo Alexander Santana Marrero, ya que él las tenía en su poder con antelación a la reunión.

16. **El día 19 de agosto de 2022, el Hospital despidió de su empleo como represalia a la demandante Rodríguez Vázquez, por su participación activa en la reunión de 20 de junio de 2022 que había sido ordenada por el Oficial Examinador del Departamento de Salud, cuyo propósito era el tratar de resolver la controversia entre las partes sin la necesidad de una vista administrativa.** [...].

[...].

18. **El despido de la demandante Rodríguez Vázquez es uno injustificado y su único propósito es tomar venganza y represalias en contra de ésta por promover una Querella ante el Departamento de Salud contra el Hospital, por éste violar las disposiciones del Reglamento 9184 de dicha entidad gubernamental y por comparecer a una reunión donde le fueron mostrados hojas clínicas de pacientes y por ella dar una explicación debido a su "expertise" del contenido de dichas hojas clínicas.**

19.[…]. **La alegación del Hospital en la carta de despido a la demandante de que supuestamente violó la Ley HIPAA, es simplemente una excusa para desalentar que los empleados participen en querellas en contra de su patrono.** (Negrillas suplidas). Ap. del certiorari AC-2023-109, págs. 24-27.

En sintonía, apreciemos la similitud de lo alegado por el señor Santana Marrero:

2.1 La parte demandante Alexander Santana Marrero comenzó a trabajar para la empresa Hospital Auxilio Mutuo en el mes de julio del año 2002.

2.2 **El demandante Alexander Santana Marrero es miembro de la Unidad Laboral de Enfermeras (os) y Empleados de la Salud, en adelante ULEES, organización que lo representa sindicalmente ante su patrono el Hospital Auxilio Mutuo.**

[…].

2.4 El demandante Alexander Santana Marrero es enfermero graduado con especialidad en anestesia (RNA) y ejerció dichas funciones en el Hospital Auxilio Mutuo hasta el 22 de agosto de 2022, cuando fue despedido.

**2.5 El demandante Alexander Santana Marrero, conjuntamente con otros empleados, promovieron que el sindicato que los representa, ULEES, instara y presentara ante el Departamento de Salud de Puerto Rico una querella en contra del Hospital Auxilio Mutuo, ya que éste tiene contratados estudiantes de anestesia que están llevando a cabo funciones que solo pueden ejecutar enfermeros (as) anestesistas licenciados (as) (RNA) como lo es el demandante.**

[…].

2.10 [Durante la vista administrativa], el representante legal del demandante produjo documentos que formaban parte de su expediente

profesional. Estos documentos fueron fotocopiados por el Hospital Auxilio Mutuo. Luego de la reproducción de los documentos el representante legal del demandante se los mostró a los testigos, el aquí demandante Alexander Santana Marrero y a Nilda Rodríguez Vázquez, quienes por su "conocimiento especializado" explicaron el contenido de estos.

2.11 Luego de terminada la reunión, el representante legal del Hospital Auxilio Mutuo le planteó al representante legal del demandante que entre los documentos producidos había algunos que eran hojas clínicas de pacientes, que supuestamente son confidenciales y no había razón alguna para que el abogado del demandante los tuviera en su poder.

[…].

2.14 **El Hospital Auxilio Mutuo despidió al demandante Santana Marrero el 22 de agosto de 2022.**

2.15 **El despido del demandante fue un acto de represalias en contra de éste, por promover una querella ante el Departamento de Salud contra el Hospital Auxilio Mutuo, por violar las disposiciones del Reglamento 9184 de dicha entidad gubernamental.**

2.16 […]. **La alegación del Hospital en las cartas de despido a los demandantes de que supuestamente violaron la Ley HIPAA es simplemente una excusa para desalentar que los empleados participen en querellas en contra de su patrono.**

[…]. (Negrillas suplidas). Ap. del certiorari AC-2024-31, págs. 27-29.

Tras un análisis meticuloso de las alegaciones presentadas por los recurridos ante el Tribunal de Primera Instancia, indudablemente se podría concluir que estas denuncian actos de práctica ilícita bajo la NLRA. Evidentemente, los recurridos sostienen que fueron despedidos por haber testificado contra su patrono en un procedimiento ante el Departamento de Salud, por una querella que ellos mismos promovieron por entender que el Hospital estaba asignando trabajo unionado al personal no unionado.

Si lo anterior fuera cierto y se probara que, en efecto, el Hospital los despidió por testificar en su contra, la Junta Nacional podría concluir que se constituyó una práctica ilícita del trabajo cuya justipreciación, en virtud de la NLRA, recae bajo su jurisdicción exclusiva. Recordemos que la Sec. 8 de la NLRA señala como práctica ilícita el **despedir a un empleado por radicar cargos, suministrar información o testificar en su contra**. ["(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act"]. 29 U.S.C.A. sec. 158(a)(4).

Por otro lado, de las alegaciones presentadas también se podría concluir que, al despedir a los unionados, el patrono restringió a sus empleados del ejercicio de sus derechos reconocidos por la Sec. 7 de la NLRA, supra. Como vimos, los empleados unionados tienen derecho a realizar actividades dirigidas a proteger y mejorar su ambiente laboral, e interferir con ello constituye una práctica ilícita de parte del patrono. Íd. De esa forma, como los recurridos instaron una querella porque su patrono contrató a estudiantes para que realizaran el trabajo que correspondía a ellos, de forma directa o indirecta se pudo haber afectado un beneficio de los empleados unionados del Hospital.

Además, en González v. Mayagüez Resort & Casino, supra, pág. 862, plasmamos que para poder determinar si un foro local puede adjudicar una controversia de este tipo hay que examinar si la controversia es idéntica o diferente de la que ha podido ser presentada ante el NLRB. Al evaluar el expediente, notamos que el 8 de septiembre de 2022, previo a acudir a los

tribunales, los recurridos asistieron directamente ante la Junta Nacional —mediante la ULEES— alegando lo siguiente:

> On or about the past six months, the above-named Employer, Hospital Auxilio Mutuo, Inc., **harassed and interrogated employee Alexander Santana about his Union activities and/or protected concerted activities, and threatened him with unspecified reprisals**. Since on or about August 2022, the above-named Exployer **has discriminated against employees Alexander Santana and Nilda Rodriguez by terminating their employment as retaliation for their Union activities and/or protected concerted activities on behalf of the Unidad Laboral de Enfermeras(os) y Empleados de la Salud, ULEES**. (Negrillas suplidas). Caso 12-CA-303186. Ap. del certiorari AC-2023-109, pág. 91.

De una lectura del cargo de práctica ilícita presentado ante la Junta Nacional *vis a vis* las alegaciones presentadas ante el foro primario, **vemos que los argumentos son los mismos.** Contrario a lo que ahora argumentaron los recurridos, los hechos alegados que provocaron el despido y en los que basan sus demandas se plantearon como violaciones a derechos que están protegidos por la NLRA. Tanto es así que los propios recurridos acudieron en primera instancia ante la NLRB para presentar el mismo reclamo, aunque después lo hayan retirado para proseguir con las demandas de epígrafe.

Al evaluar los planteamientos del señor Santana Marrero y la señora Rodríguez Vázquez, es forzoso concluir que su reclamación debe hacerse ante la NLRB. De prosperar sus alegaciones, estaríamos ante una práctica ilícita del trabajo objetada por la Ley Taft-Hartley. Los tribunales locales carecemos de jurisdicción para determinar eso y, por lo tanto, para atender esta queja. Véase, Chamber of Com. of U.S. v. Brown, supra, pág. 65.

Del mismo modo, aprovechamos la oportunidad que presenta este caso para clarificar que, si bien la Sec. 7 de la NLRA protege los derechos de los empleados a organizarse y a realizar actividades concertadas con el propósito de ayudarse mutuamente, en las alegaciones ante los tribunales locales no es necesario plasmar el término "actividades concertadas", o cualquier equivalente, para que opere el desplazamiento ordenado por el Congreso federal. Como mencionamos anteriormente, la conducta involucrada es la clave para determinar a cuál foro corresponde atender la controversia. Utilizar un lenguaje distinto como subterfugio para traspasar las fronteras jurisdiccionales no tiene cabida en el ordenamiento. Lo opuesto, entiéndase, que la jurisdicción exclusiva de la Junta Nacional dependa de que se alegue de forma literal que se atentó contra "actividades concertadas" protegidas, quebrantaría la clara intención detrás de la NLRA y podría conllevar a que se presenten dos alegaciones distintas por los mismos hechos y que se penalice al patrono en múltiples ocasiones por la misma conducta. Recordemos que un empleado que reclame que fue despedido por realizar una actividad protegida por la Ley Taft-Hartley, solo tiene derecho al remedio que le concede dicha ley. Los tribunales locales no tenemos facultad para intervenir en estos asuntos. González v. Mayagüez Resort & Casino, supra, pág. 862; Rivera v. Security Nat. Life Ins. Co., supra, págs. 526-527.

Contrario a lo alegado por los recurridos y a lo concluido por el foro intermedio, tampoco importa si las reclamaciones ante el Tribunal de Primera Instancia están fundamentadas en

violaciones de leyes locales, ya que este análisis se efectúa tomando en consideración el tipo de conducta involucrada, y no la naturaleza legal del remedio solicitado. González v. Mayagüez Resort & Casino, supra, pág. 862. La doctrina de desplazamiento en el ámbito laboral impide que un tribunal estatal atienda una conducta proscrita por la Junta Nacional, independientemente de si la misma violenta, a su vez, derechos según la Constitución local o alguna legislación laboral estatal. Íd., pág. 863.

En conclusión, ante la ausencia de jurisdicción sobre la materia, el tribunal está facultado para así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. Torres Alvarado v. Madera Atiles, supra, pág. 501. Esta desestimación se basa en lo que se alega —sin cuestionar si es cierto o no— pues el foro con jurisdicción exclusiva es el único autorizado a estimar cuáles son los hechos probados, luego de sopesar la evidencia que en su día las partes presenten. González v. Mayagüez Resort & Casino, supra, pág. 864. Si pretendemos adjudicar los hechos que configuran la práctica ilícita como paso previo para establecer la jurisdicción exclusiva del NLRB, echaríamos por la borda el desplazamiento que ordena la ley federal. Recalcamos que sería un contrasentido intervenir en los méritos de la controversia para luego decidir que no podíamos hacerlo. Íd.

IV

Por los fundamentos antes expuestos, revocamos los dictámenes del Tribunal de Apelaciones en los casos

KLCE202301095 y KLCE202400040. Al hacerlo, desestimamos los casos consolidados de epígrafe, por falta de jurisdicción. Se dictará Sentencia en conformidad.



RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nilda Rodríguez Vázquez<br><br>Recurrida<br><br>v.<br><br>Hospital Español Auxilio Mutuo<br><br>Peticionario<br>_____<br><br>Alexander Santana Marrero, Dinorah Burgos Luccioni y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos<br><br>v.<br><br>Hospital Español Auxilio Mutuo<br><br>Peticionario | AC-2023-0109<br><br>cons. con<br><br>AC-2024-0031 |

SENTENCIA

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos los dictámenes del Tribunal de Apelaciones en los casos KLCE202301095 y KLCE202400040. Al hacerlo, desestimamos los casos consolidados de epígrafe, por falta de jurisdicción.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió una Opinión disidente a la cual se unió la Jueza Presidenta Oronoz Rodríguez. La Jueza Asociada Rivera Pérez no interviene.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nilda Rodríguez Vázquez<br><br>     Recurrida<br><br>          v.<br><br> Hospital Español Auxilio Mutuo<br><br>     Peticionario<br>_____<br><br>Alexander Santana Marrero,<br>Dinorah Burgos Luccioni y la<br>Sociedad Legal de Gananciales<br>compuesta por ambos<br><br>     Recurridos<br><br>          v.<br><br>Hospital Español Auxilio Mutuo<br><br>     Peticionario | AC-2023-0109<br><br>cons. con<br><br>AC-2024-0031 |

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la que se une la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Por considerar que son los tribunales estatales los foros con jurisdicción para atender toda reclamación que, por despido injustificado y represalias, tenga una obrera o un obrero unionado en contra de su patrono, -- **cuando la misma no tenga el propósito de proteger los intereses del sindicato al cual pertenecen** --, respetuosamente disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso. Veamos.

I.

Los hechos medulares que dan margen al presente litigio no están en controversia. En extrema síntesis, el 24 de mayo de 2023 el Sr. Alexander Santana Marrero, -- enfermero anestesista de profesión --, la Sra. Dinorah Burgos Luccioni y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante y en conjunto, "señor Santana Marrero") presentaron ante el Tribunal de Primera Instancia una *Demanda* por despido injustificado y represalias en contra del Hospital Español Auxilio Mutuo (en adelante, "Hospital Auxilio Mutuo"). Lo anterior, al amparo de la Ley Núm. 80 de 30 de mayo de 1976, también conocida como la *Ley sobre Despidos Injustificados*, *infra* (en adelante, "Ley Núm. 80-1976") y de la Ley Núm. 115 de 20 de diciembre de 1991, también conocida como la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, *infra* (en adelante, "Ley Núm. 115-1991").

En esencia, en el referido escrito el señor Santana Marrero alegó, ante el foro primario, que trabajó para el Hospital Auxilio Mutuo por un poco más de veinte (20) años hasta que, el 22 de agosto de 2022, fue despedido por represalias. Ello, luego de que participara como testigo en cierto proceso administrativo celebrado ante el Departamento de Salud, relacionado con la Querella Núm. Q-22-03-004, la cual fue presentada por la Unidad Laboral de Enfermeros y Empleados de la Salud (en adelante, "ULEES"), en contra de la referida institución hospitalaria.

En dicha querella, -- entiéndase, la Querella Núm. Q-22-03-004 --, la cual se presentó al amparo del *Reglamento para la Construcción, Operación, Mantenimiento y Licenciamiento de los Hospitales en Puerto Rico*, Reglamento Núm. 9184, Departamento de Salud, 1 de julio de 2020 (en adelante, "Reglamento Núm. 9184"), la ULEES alegó que el Hospital Auxilio Mutuo contrataba estudiantes de anestesia para que éstos ejercieran las funciones de un enfermero anestesista licenciado, y que, además, dichos estudiantes tenían pacientes a su cargo sin que la referida institución hospitalaria ejerciera la supervisión adecuada y requerida, lo cual es contrario a lo dispuesto en la mencionada reglamentación. Es menester señalar que, luego de la investigación de rigor, el Secretario del Departamento de Salud emitió una *Resolución* mediante la cual concluyó que, en efecto, el Hospital Auxilio Mutuo estaba en incumplimiento con el Reglamento Núm. 9184.

Por su parte, y de vuelta a lo relacionado a la causa de epígrafe, el 25 de mayo de 2023 la Sra. Nilda Rodríguez Vázquez (en adelante, "señora Rodríguez Vázquez"), -- también enfermera anestesista --, de igual manera presentó ante el foro primario una *Demanda* por despido injustificado y represalias en contra de la referida institución hospitalaria. Al igual que el señor Santana Marrero, la reclamación de ésta última fue al amparo de la Ley Núm. 80-1976 y de la Ley Núm. 115-1991. En su *Demanda*, la señora Rodríguez Vázquez alegó que trabajó para el Hospital Auxilio Mutuo por aproximadamente diecisiete (17) años y que su

despido se debió a que, además de participar como testigo en la Querella Núm. Q-22-03-004, fue ella quien promovió que la ULEES presentara la misma.

Enterado de lo anterior, la referida institución hospitalaria presentó ante el Tribunal de Primera Instancia una *Moción de desestimación* para cada demanda. En dichos escritos, el Hospital Auxilio Mutuo solicitó que las mencionadas reclamaciones fuesen desestimadas, puesto que los asuntos allí planteados eran de la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo. En particular, la referida institución hospitalaria argumentó que las alegaciones de despido injustificado y represalias contenidas en las demandas presentadas en su contra se fundamentaban en conductas que podrían considerarse actos de prácticas ilícitas bajo la *National Labor Relations Act*, *infra*.[1]

En respuesta, el señor Santana Marrero y la señora Rodríguez Vázquez se opusieron a las solicitudes de desestimación presentadas por el Hospital Auxilio Mutuo. En su *Oposición*, el señor Santana Marrero indicó que de las alegaciones en su *Demanda* no se desprendía que su participación como testigo en la Querella Núm. Q-22-03-004 tuviera el propósito de adelantar o proteger los intereses del sindicato al que pertenece, lo cual sería necesario para que la Junta Nacional de Relaciones del Trabajo tuviera jurisdicción exclusiva para atender su reclamación.

---

[1] Específicamente, el Hospital Auxilio Mutuo adujo que la Sec. 10 de la *National Labor Relations Act*, *infra,* confiere jurisdicción exclusiva a la Junta Nacional de Relaciones del Trabajo sobre reclamaciones al amparo de la misma.

La señora Rodríguez Vázquez, por su parte, y en su *Oposición*, enfatizó el hecho de que las alegaciones incluidas en su *Demanda* estaban fundamentadas, exclusivamente, en violaciones a las leyes laborales locales antes mencionadas, -- a saber, la Ley Núm. 80-1976 y la Ley Núm. 115-1991 --, y no así en violaciones a derechos protegidos por la *National Labor Relations Act*, *infra.* Asimismo, expresó que la razón por la cual el Hospital Auxilio Mutuo indicó haberla despedido fue un pretexto para así hacerlo y que, en realidad, fue despedida por su participación como testigo en la Querella Núm. Q-22-03-004, presentada por la ULEES en contra de éste.[2]

Recibidos los mencionados escritos del señor Santana Marrero y la señora Rodríguez Vázquez, la referida institución hospitalaria presentó una *Réplica a oposición a moción de desestimación* en cada pleito. En dichos escritos, el Hospital Auxilio Mutuo reiteró su argumentó sobre la jurisdicción exclusiva que ostenta la Junta Nacional de Relaciones del Trabajo para atender los reclamos presentados por el enfermero y la enfermera anestesista en cuestión, puesto que éstos estaban basados en represalias sufridas al ser despedidos por participar en cuestiones sindicales llevadas a cabo por la ULEES.[3]

---

[2] Según surge del expediente, la señora Rodríguez Vázquez y el señor Santana Marrero fueron despedidos por haber incurrido en alegada violación a la *Health Insurance Portability and Accountability Act*, Pub. L. No. 104-191, 100 Stat. 1934 (1996), mejor conocida como la Ley HIPAA, dentro del mencionado procedimiento llevado a cabo ante el Departamento de Salud.

[3] Para sostener su argumento, el Hospital Auxilio Mutuo indicó que la ULEES, -- en representación del señor Santana Marrero y de la señora Rodríguez Vázquez --, presentó cargos en su contra, ante la Junta Nacional de Relaciones del Trabajo, por los mismos hechos. Cabe señalar que dicha

**Así las cosas, y luego de varios incidentes procesales no necesarios aquí pormenorizar, el Tribunal de Primera Instancia emitió dos resoluciones, -- una en cada caso --, en las que declaró no ha lugar las solicitudes de desestimación presentadas por el Hospital Auxilio Mutuo. El foro primario, en síntesis, enfatizó que las reclamaciones presentadas por el señor Santana Marrero y la señora Rodríguez Vázquez eran al amparo de la legislación local antes mencionada, -- entiéndase, la Ley Núm. 80-1976 y la Ley Núm. 115-1991 --, y no de las Secs. 7 y 8 de la *National Labor Relations Act*, *infra*, por lo que dicho foro tenía jurisdicción para determinar si, en efecto, éstos habían sido despedidos injustificadamente y por represalias. A su vez, el Tribunal de Primera Instancia señaló que la *Querella* presentada por la ULEES ante el Departamento de Salud, -- en la cual el señor Santana Marrero y la señora Rodríguez Vázquez fungieron como testigos --, no buscaba adelantar cuestiones de negociación colectiva o la protección de empleados unionados, que ameritase fuese la Junta Nacional de Relaciones del Trabajo quien atendiese el presente caso.**

En desacuerdo con las determinaciones del foro primario, la referida institución hospitalaria acudió ante el Tribunal de Apelaciones, mediante dos recursos de *certiorari*. En esencia, en éstos, el Hospital Auxilio Mutuo reiteró que las reclamaciones presentadas ante el Tribunal de Primera Instancia por el señor Santana Marrero y la señora Rodríguez

---

reclamación fue retirada previo a que se presentaran las demandas aquí en cuestión.

Vázquez estaban fundadas en asuntos de la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo.

**Evaluados los recursos presentados, el foro apelativo intermedio, por voz de dos Paneles de Apelación distintos, denegó expedir los mismos.[4] Ello, en esencia, por entender que el foro primario, en efecto, tenía jurisdicción para atender los reclamos, por despido injustificado y represalias, que el señor Santana Marrero y la señora Rodríguez Vázquez tenían en contra del Hospital Auxilio Mutuo.**

Inconforme con el proceder del Tribunal de Apelaciones, la referida institución hospitalaria acudió ante nos mediante dos solicitudes de apelación. En dichos escritos, y en síntesis, el Hospital Auxilio Mutuo aduce que el foro apelativo intermedio erró al determinar que el Tribunal de Primera Instancia tenía jurisdicción para atender los casos de epígrafe. A dicha solicitud, oportunamente, y bajo fundamentos similares a los expuestos ante el foro primario y el Tribunal de Apelaciones, el señor Santana Marrero y la señora Rodríguez Vázquez se opusieron.

Expedido el presente recurso en reconsideración, una mayoría de mis compañeros y compañera de estrado ha determinado que el Tribunal de Primera Instancia no tenía jurisdicción, -- en este caso, sobre la materia --, para

---

[4] En el caso del señor Santana Marrero, el Panel de Apelación estuvo integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

En el caso de la señora Rodríguez Vázquez, el Panel de Apelación estuvo integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

atender las acciones por despido injustificado y represalias que ante sí fueron incoadas por el señor Santana Marrero y la señora Rodríguez Vázquez. Ello, al concluir, -- a nuestro juicio, equivocadamente --, que las alegaciones de estos últimos denuncian actos de prácticas ilícitas de un patrono que, bajo la *National Labor Relations Act*, *infra*, solo pueden ser atendidas por la Junta Nacional de Relaciones del Trabajo.

Con dicha conclusión, como ya adelantamos, no podemos estar de acuerdo. Por ello, respetuosamente disentimos. Procedamos, pues, a explicar el porqué.

## II.

Como se sabe, uno de los mecanismos que tiene disponible la parte demandada en un pleito para, -- en etapas tempranas del litigio --, solicitar que se desestimen una o varias de las causas de acción instadas en su contra es la moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Véase también, *Colón v. Lotería*, 167 DPR 625, 649 (2006). En su inciso (1), y en lo pertinente a los asuntos que nos ocupan, la mencionada disposición reglamentaria hace mención a la falta de jurisdicción sobre la materia como uno de los fundamentos en que puede basarse una solicitud desestimación al palio de ésta. Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2(1).

Sobre este particular, -- entiéndase, la jurisdicción sobre la materia --, es norma reiterada que los tribunales estatales tienen autoridad para atender todos los asuntos que

se presenten ante sí al amparo de leyes estatales. *Rodríguez v. Overseas Military*, 160 DPR 270, 278 (2003). Véase también, *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990) y *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981). Asimismo, éstos tienen jurisdicción concurrente con los tribunales federales para, en ciertas instancias, atender controversias que surjan en virtud de algún estatuto federal. *Íd.*

Empero, esto último es así, siempre y cuando, el Congreso de los Estados Unidos no haya privado a los tribunales estatales de autoridad para atender determinados asuntos, es decir, no haya ocupado el campo. *Rodríguez v. Overseas Military*, supra, 278-279 (2003). Véase también, *Yellow Freight System, Inc. v. Donnelly,* supra, y *Gulf Offshore Co. v. Mobil Oil Corp.*, supra. Recordemos que, conforme a lo dispuesto en la Cláusula de la Supremacía de la Constitución de los Estados Unidos de América, Art. VI, Const. EE.UU., LPRA, Tomo 1, el Congreso federal puede, a través de sus leyes, -- disponiéndolo bien sea expresamente o porque se pueda inferir a raíz de la intención legislativa --, otorgar o privar de jurisdicción a un tribunal estatal para atender ciertos asuntos. *Rodríguez v. Overseas Military*, supra. Véase también, *Yellow Freight System, Inc. v. Donnelly*, supra, y *Gulf Offshore Co. v. Mobil Oil Corp.*, supra.

Así pues, en el caso de que, en efecto, un tribunal estatal carezca de jurisdicción sobre la materia para atender determinado asunto que haya sido presentado ante sí, el mismo

debe ser desestimado sin entrar en los méritos de la controversia. Regla 10.8(c) de Procedimiento Civil, 32 LPRA Ap. V; *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855-856 (2009); *González Santos v. Bourns P.R., Inc.*, 125 DPR 48, 63 (1989). La Regla 10.2 de Procedimiento Civil, *supra*, como ya hemos señalado, puede ser el vehículo procesal para adelantar tales fines.

**No obstante, y según ha sido sentenciado por este Tribunal en el pasado, no debemos olvidar que, al momento de considerar una moción de desestimación, -- como lo es la Moción de Desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra* --, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, además, deben considerarlos de la manera más favorable a la parte demandante.** *López García v. López García*, 200 DPR 50, 69-70 (2018); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Ortiz Matías v. Mora Development*, 187 DPR 649, 654 (2013). **En ese sentido, para que proceda la desestimación de una controversia, es imperativo que se demuestre "de forma certera que el demandante no tiene derecho alguno bajo cualquier estado de [D]erecho que se pudiera probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".** *Íd.* De eso, precisamente, trata el caso de marras.

Habiendo atendido la normativa procesal que gobierna los asuntos ante nuestra consideración, pasemos pues, a evaluar la normativa sustantiva que es necesaria repasar para la completa y correcta disposición de los mismos.

III.

A.

En específico, y de entrada, debemos recordar que la *National Labor Relations Act*, Pub. L. No. 74-198, 49 Stat. 449 (1935), 29 USCA secs. 151-169 (en adelante, "NLRA"), es el estatuto, de estirpe federal, que alienta la práctica y el procedimiento de la negociación colectiva entre obreros u obreras y patronos. A su vez, protege el ejercicio de los trabajadores y las trabajadoras a asociarse, organizarse y elegir libremente sus representantes para así negociar mejores términos y condiciones de trabajo. Sec. 1, NLRA, 29 USCA sec. 151. El propósito detrás de dicha disposición legal era, y es, en parte, reducir los efectos adversos que tienen las huelgas obreras en el comercio.[5] *Íd.*

En particular, y en lo pertinente a los asuntos ante nuestra consideración, la Sec. 7 de la NLRA, *infra*, protege los derechos de los empleados y las empleadas a organizarse, a constituir, afiliarse o ayudar a organizaciones obreras, a negociar colectivamente a través de representantes seleccionados por ellos mismos, y a dedicarse a otras actividades concertadas con el propósito de negociar colectivamente u otro fin de ayuda o protección mutua.[6] Sec. 7, NLRA, 29 USCA sec. 157.

---

[5] Cabe señalar que dicha ley fue enmendada en el 1947 por la *Labor Management Relations Act of 1947*, Pub. L. No. 80-101, 61 Stat. 136 (1947), 29 USCA secs. 141-197, mejor conocida como la Ley Taft-Hartley (en adelante, "Ley Taft-Hartley"). Lo anterior, para reiterar y extender el derecho a la negociación colectiva, en miras de proteger aún más el flujo de comercio. Sec. 1 de la Ley Taft-Hartley, *supra*, 29 USCA sec. 141.

[6] Luego de ser enmendada por la Ley Taft-Hartley, *supra*, la Sec. 7 de la NLRA, *supra*, lee de la siguiente manera:

La Sec. 8 de la NLRA, *infra*, por su parte, dispone las acciones que, de ser llevadas a cabo por empleadores o sindicatos, serán consideradas como prácticas ilícitas de trabajo. Sec. 8, NLRA, 29 USCA sec. 158. Entre estas razones, se encuentran la interferencia en el ejercicio de los derechos garantizados a los empleados y las empleadas por la Sec. 7 de la misma ley, y <u>el despedir a un obrero u obrera, o discriminar en su contra, por radicar cargos, o testificar en contra del patrono, **al amparo de la NLRA**, *supra*</u>.[7] *Íd.*

**Como se puede apreciar, y en lo pertinente a los asuntos que nos ocupan, bajo la NLRA, *supra*, se considerará una práctica ilícita de trabajo el que un patrono despida a un obrero o una obrera como represalias por haber presentado una reclamación, o haber testificado, en su contra. <u>Sin embargo, dicha reclamación, -- a saber, la que tuvo como efecto el</u>**

---

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [section 158(a)(3) of this title]. Sec. 7, NLRA, 29 USCA sec. 157.

[7] La Sec. 8. de la NLRA, *supra*, establece, en lo pertinente al caso que nos ocupa, lo siguiente:

(a) [Unfair labor practices by employer] It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [section 157 of this title];

[. . .]

**(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony <u>under this Act</u>** [subchapter];

[. . .] (Énfasis suplido). Sec. 8, NLRA, 29 USCA sec. 158.

**despido --, necesariamente, debe haber sido presentada al amparo del referido estatuto, entiéndase, de la NLRA, *supra*. En otras palabras, ésta debe estar fundamentada en un reclamo de derechos sindicales.**

Así las cosas, y para poder atender adecuadamente, de así haberlos, reclamos como los antes expuestos, la NLRA, *supra*, creó la Junta Nacional de Relaciones del Trabajo, entidad con la tarea de prevenir que una persona lleve a cabo cualquiera de las prácticas ilícitas de trabajo enumeradas en la Sec. 8 de dicho estatuto.[8] Sec. 10, NLRA, 29 USCA sec. 160, inciso (a). En esa tarea, -- y según dispone la NLRA, *supra*, en su Sec. 10 --, como es sabido, la Junta Nacional de Relaciones del Trabajo tiene jurisdicción exclusiva. Así, correctamente, lo ha reconocido este Tribunal en reiteradas ocasiones. Véase, *González v. Mayagüez Resort & Casino, supra*; *Vargas v. Molinos Nacionales, Inc.*, 134 DPR 919, (1993); *Rivera v. Security Nat. Life Ins. Co.*, 106 DPR 517 (1977).

---

[8] En particular, la Sec. 10 de la precitada disposición legal, en su inciso (a), indica lo siguiente:

> (a) [Powers of Board generally] The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8 [section 158 of this title]) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominately local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act [subchapter] or has received a construction inconsistent therewith. Sec. 10, NLRA, 29 USCA sec. 160, inciso (a).

B.

De otra parte, y ya más en lo referente a los estatutos de estirpe local que gobiernan los asuntos ante nuestra consideración, conviene mencionar aquí que, la Ley Núm. 80-1976, 29 LPRA sec. 185a *et seq.*, es la disposición legal que busca otorgar remedios justos a quienes hayan sido despedidos o despedidas injustamente de su empleo; procurando, a su vez, desalentar dicha práctica. Exposición de Motivos, Ley Núm. 80-1976, *supra*. A esos fines, la Ley Núm. 80-1976 garantiza el que un obrero o una obrera, que haya sido despedida sin justa causa, tenga derecho a recibir una indemnización por su despido, cuantía que será determinada a la luz del periodo de tiempo que éste o ésta haya trabajado para el patrono. Art. 1, Ley Núm. 80-1976, 29 LPRA sec. 185a. Véase también, *Romero v. Cabrer Roig,* 191 DPR 643, 650 (2014).

El Art. 2 de la Ley Núm. 80-1976, *supra*, por otro lado, es el que dispone las razones que se considerarán justa causa para el despido de un obrero o una obrera. 29 LPRA sec. 185b. Entre éstas razones, se encuentran aquellas que afecten el buen y normal funcionamiento de un establecimiento, como por ejemplo: (1) que el obrero o la obrera incurra en un patrón de conducta impropia o desordenada, o de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente; (2) que éste o ésta viole reiteradamente las reglas y reglamentos razonables establecidos; (3) el cierre total, temporero o parcial de las operaciones; (4) cambios tecnológicos, de reorganización, del producto ofrecido o de servicios rendidos; y (5) reducciones en el empleo necesarias

como consecuencia de una disminución en el volumen de producción o ventas. *Íd.* Asimismo, "se entenderá por justa causa para el despido de un [obrero o una obrera] aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono". *Íd.*

Ahora bien, la precitada disposición también indica que el que un obrero o una obrera colabore o se exprese en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, no se considerará justa causa para su despido. *Íd.* De ser despedido por ello, éste o ésta tendrá derecho "a que se ordene su inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo". *Íd.*

C.

Por último, y según surge de su Exposición de Motivos, la Ley Núm. 115-1991, 29 LPRA sec. 194 *et seq.*, fue aprobada con el propósito de confirmar y ampliar la política pública del País en cuanto a la protección de derechos de la clase obrera se refiere. Exposición de Motivos, Ley Núm. 115-1991, *supra*. Esta disposición legal tiene como fin proteger a los obreros y las obreras de acciones adversas por parte de sus patronos luego de que éstos o éstas provean cualquier "testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico". Art. 2(a), Ley Núm. 115-1991, 29 LPRA sec. 194b.

Así pues, un obrero o una obrera que sea despedido, amenazado o discriminado por ello podrá incoar una acción civil en contra de su patrono para que "se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado". *Íd.*, inciso (b). De determinarse que, en efecto, el patrono incurrió en la mencionada conducta prohibida por la Ley Núm. 115-1991, la cuantía por la cual éste responderá será el doble de los daños y de los salarios dejados de devengar. *Íd.*

Es, pues, a la luz de la normativa antes expuesta que, -- desde la disidencia --, procedemos a disponer del caso que nos ocupa.

IV.

Como mencionamos anteriormente, en el presente caso, el señor Santana Marrero y la señora Rodríguez Vázquez sostienen que, -- tal y como resolvieron los foros primarios y apelativo intermedio --, sus reclamaciones por despido injustificado y represalias, las cuales presentaron individualmente en contra del Hospital Auxilio Mutuo al amparo de legislación local, **y que no tienen el propósito de proteger el sindicato al cual pertenecen**, deben ser atendidas por el Tribunal de Primera Instancia y no por la Junta Nacional de Relaciones del Trabajo, como alega quien en un momento dado fue su patrono. Les asiste la razón.

Y es que, de conformidad con la normativa antes expuesta, para que opere la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo en casos como el que

hoy tenemos ante nuestra consideración, es imprescindible que, **a través de las alegaciones sostenidas por los o las reclamantes**, éstos y éstas denuncien una de las prácticas ilícitas de trabajo contenidas en la Sec. 8 de la NLRA, *supra*. Ello, sencillamente, no fue lo alegado aquí.

En particular, y en cuanto a lo que aquí nos concierne, el señor Santana Marrero incluyó en su *Demanda* las siguientes alegaciones:

[…].

2.1 La parte demandante Alexander Santana Marrero comenzó a trabajar para la empresa Hospital Auxilio Mutuo en el mes de julio del año 2002.

2.2 El demandante Alexander Santana Marrero es miembro de la Unidad Laboral de Enfermeras(os) y Empleados de la Salud, en adelante ULEES, organización que lo representa sindicalmente ante su patrono el Hospital Auxilio Mutuo.

[…].

2.4 **El demandante Alexander Santana Marrero es enfermero graduado con especialidad en anestesia (RNA) y ejerció dichas funciones en el Hospital Auxilio Mutuo hasta el 22 de agosto de 2022, cuando fue despedido.**

2.5 **El demandante Alexander Santana Marrero, conjuntamente con otros empleados, promovieron que el sindicato que los representa, ULEES, instara y presentara ante el Departamento de Salud de Puerto Rico una querella en contra del Hospital Auxilio Mutuo, ya que éste tiene contratados estudiantes de anestesia que están llevando a cabo funciones que solo pueden ejecutar enfermeros(as) anestesistas licenciados(as) (RNA)[,] como lo es el demandante.**

2.6 La alegación principal de la querella presentada ante el Departamento de Salud es que los estudiantes de anestesia ejercen las funciones de atender pacientes solos, sin la supervisión directa de un anestesista y/o de sus superiores, lo que constituye una violación al Reglamento Núm. 9184 del Departamento de Salud.

2.7 La querella ante el Departamento de Salud lleva el número Q-22-03-004, y fue presentada el 21 de marzo de 2022, por el representante sindical del demandante.

[…].

2.9 Durante el proceso administrativo[,] el Oficial Examinador celebró una vista, en la cual compelió a la ULEES y al Hospital Auxilio Mutuo, para que se reunieran y trataran de resolver la controversia. Las partes se reunieron el 20 de junio de 2022, en las facilidades del Hospital Auxilio Mutuo. **A dicha reunión comparecieron el demandante Alexander Santana Marrero y Nilda Rodríguez Vázquez**, <u>como testigos de la demandante</u>, funcionarios del Hospital Auxilio Mutuo, así como el Lic. Carlos M. Ortiz Velázquez en representación del demandante, y el Lic. José Vélez Gutiérrez en representación de la demandada.

2.10 En la reunión antes mencionada [a saber, la reunión llevada a cabo el 20 de junio de 2022], el representante legal del demandante produjo documentos que formaban parte de su expediente profesional. Estos documentos fueron fotocopiados por el Hospital Auxilio Mutuo. Luego de la reproducción de los documentos[,] el representante legal del demandante se los mostró a los testigos, el aquí demandante Alexander Santana Marrero y a Nilda Rodríguez Vázquez, quienes por su "conocimiento especializado" explicaron el contenido de estos.

2.11 Luego de terminada la reunión, el representante legal del Hospital Auxilio Mutuo le planteó al representante legal del demandante que entre los documentos producidos había algunos que eran hojas clínicas de pacientes, que supuestamente son confidenciales y no había razón alguna para que el abogado del demandante los tuviera en su poder.

2.12 Con posterioridad a la reunión entre las partes para discutir la querella, los demandantes fueron citados al Departamento de Recursos Humanos donde estuvieron presentes funcionarios del Hospital Auxilio Mutuo, […]. El hospital le informó a los demandantes Alexander Santana Marrero y Nilda Rodríguez Vázquez que había iniciado una investigación para determinar cómo los documentos confidenciales habían llegado a manos del representante legal del demandante. En dicha ocasión el Hospital Auxilio Mutuo le imputó al demandante y los testigos ante el Departamento de Salud, haber tenido en su poder y circulado hojas

clínicas de pacientes, lo que alegadamente constituye una violación al Health Insurance Portability and Accountability Act of 1996 (Ley HIPAA). El representante legal del demandante le indicó e informó a los funcionarios del Hospital, así como a su representante legal […], que las hojas clínicas de los pacientes que él produjo en la reunión de 20 de junio de 2022, no le habían sido entregadas por los testigos Alexander Santana Marrero, aquí demandante, ni por Nilda Rodríguez Vázquez.

2.13 Durante el proceso investigativo que inició el Hospital Auxilio Mutuo en contra del demandante Alexander Santana Marrero y Nilda Rodríguez Vázquez, el representante legal del demandante ante el Departamento de Salud, le cursó dos (2) comunicaciones a funcionarios del Hospital, indicándole que los documentos que él produjo en dicha reunión no le habían sido entregados por el demandante, y que Santana Marrero y Rodríguez Vázquez nunca habían tenido control de los documentos

2.14 **El Hospital Auxilio Mutuo despidió al demandante Santana Marrero el 22 de agosto de 2022.**

2.15 **El despido del demandante fue un acto de represalias en contra de éste, por promover una querella ante el Departamento de Salud contra el Hospital Auxilio Mutuo, por violar las disposiciones del Reglamento 9184 de dicha entidad gubernamental.**

2.16 Hay que señalar que la reunión de 20 de junio de 2022, ordenada por el Oficial Examinador[,] fue una privada y confidencial entre las partes que litigaban la querella ante el Departamento de Salud y que lo allí hablado y explicado no trascendió, ni fue informado por el demandante Santana Marrero a terceras personas. **La alegación del Hospital en las cartas de despido a los demandantes de que supuestamente violaron la Ley HIPAA es simplemente una excusa para desalentar que los empleados participen en querellas en contra de su patrono.**

2.17 **El 8 de mayo de 2023[,] el Departamento de Salud emitió una resolución mediante la cual declaró "ha lugar" la querella promovida por el demandante, en cuanto a la alegación de que se estaban utilizando estudiantes de medicina para llevar a cabo funciones que solo pueden desempeñar enfermeros anestesistas con licencia.**

[…].

3.1 **El despido del demandante fue un acto de represalias en contra de éste, por promover una querella ante el Departamento de Salud contra el Hospital Auxilio Mutuo, por violar las disposiciones del Reglamento 9184 de dicha entidad gubernamental.**

3.2 **El despido del demandante Alexander Santana Marrero constituye una violación a la Ley de Represalias contra el Empleado por Ofrecer Testimonio, Ley Núm. 115 de 20 de [diciembre] de 1991.**

3.3 **El despido del Sr. Santana Marrero le ha causado sufrimientos y angustias mentales,** los cuales se estiman en una cantidad no menor a los cien mil dólares ($100,000.00).

3.4 **Producto del despido, el Sr. Santana Marrero dejó de devengar su sueldo, y producto de esto ha tenido pérdidas económicas,** las cuales ascienden a una cantidad aproximada a los setenta y cinco mil dólares ($75,000.00). Estas pérdidas económicas continúan aumentando con el pasar del tiempo.

3.5 **El Sr. Santana Marrero tiene derecho a ser reinstalado en su puesto de empleo.**

3.6 La responsabilidad del Hospital Auxilio Mutuo con relación a los daños y a los salarios que el demandante dejó de devengar, según las disposiciones de la Ley Núm. 115-1991, es el doble de la cuantía que se determine causó la violación a las disposiciones de esta Ley.

[…].

5.1 **En la alternativa, el despido del Sr. Santana Marrero constituye un despido injustificado, según las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976.**

[…].

5.3 Según las disposiciones de la Ley Núm. 80, supra, la parte demandante[,] Alexander Santana Marrero, por haber sido despedido sin justa causa, tiene derecho a que la parte demandada le pague una indemnización de $115,000.00. (Énfasis suplido). Ap. del certiorari AC-2024-0031, págs. 27-31.

Por su parte, la señora Rodríguez Vázquez, en su *Demanda,* alegó lo siguiente:

[…].

3. La demandante [Nilda Rodríguez Vázquez] trabajó para el Hospital [Auxilio Mutuo] desde el mes de enero del 2005.

[…].

6. La demandante Nilda Rodríguez Vázquez es miembro de la Unidad Laboral de Enfermeras(os) y Empleados de la Salud, en adelante "ULEES", organización que la representa sindicalmente ante su patrono[,] el Hospital.

7. **La demandante Nilda Rodríguez Vázquez es enfermera graduada con especialidad en anestesia (RNA) y ejerció dichas funciones en el Hospital Auxilio Mutuo hasta el 20 de agosto de 2022 cuando fue despedida injustamente y como producto de una represalia del patrono.**

8. **La demandante Nilda Rodríguez Vázquez en conjunto a otros empleados promovieron que el sindicato que los representa[,] ULEES, instara y presentara ante el Departamento de Salud de Puerto Rico una Querella en contra del Hospital, ya que su patrono tiene contratados estudiantes de anestesia qui[e]nes llevan a cabo funciones que solo pueden ejecutar enfermeros(as) anestesistas licenciados(as) (RNA)[,] como lo es la demandante.**

9. La alegación principal de la Querella ante el Departamento de Salud es que los estudiantes de anestesia ejercen las funciones de atender pacientes solos, sin la supervisión directa de un anestesista y/o de sus superiores, lo que constituye una violación al Reglamento 9184 del Departamento de Salud.

10. La Querella ante el Departamento de Salud lleva el número Q-22-03-004[,] siendo presentada el 21 de marzo de 2022, por el representante sindical de la demandante. […].

[…].

12. Durante el proceso administrativo[,] el Oficial Examinador celebró una vista, en la cual compelió a la ULEES y al Hospital para que se reunieran y tratar de resolver la controversia. Las partes se reunieron el 20 de junio de 2022, en las facilidades

del hospital. **A dicha reunión comparecieron la demandante Nilda Rodríguez Vázquez, y Alexander Santana Marrero <u>como testigos de la querellante</u>**, funcionarios del Hospital, así como el Lic. Carlos M. Ortiz Velázquez, en representación de la querellante y el Lic. José Vélez Gutiérrez, en representación de la querellada.

13. En la reunión[,] el representante legal de la querellante produjo documentos que formaban parte de su expediente profesional, los cuales el representante legal de la querellada, o sea el Hospital, reprodujo. Luego de la reproducción de los documentos[,] el representante legal de la querellante se los mostró a los testigos, la aquí demandante Nilda Rodríguez Vázquez y Alexander Santana Marrero, qui[e]nes por su "expertise" explicaron el contenido de estos.

14. Luego de terminada la reunión, el representante legal del Hospital le planteó al representante legal de la querellante que entre los documentos producidos había algunos que eran hojas clínicas de pacientes, que supuestamente son confidenciales y no había razón alguna para que el abogado de la querellante los tuviese en su poder.

15. Con posterioridad a la reunión entre las partes para discutir la querella, los testigos Rodríguez Vázquez y Santana Marrero fueron citados al Departamento de Recursos Humanos del Hospital donde estuvieron presentes funcionarios del Hospital, […]. El hospital le informó a Santana Marrero y a Rodríguez Vázquez que había iniciado una investigación para determinar cómo los documentos confidenciales habían llegado a manos del representante legal de la querellante. En dicha ocasión[,] el Hospital le imputó a la demandante Rodríguez Vázquez y al otro testigo ante el Departamento de Salud[,] Santana Marrero, haber tenido en su poder y haber circulado hojas clínicas de pacientes, lo que alegadamente constituye una violación al Health Insurance Portability and Accountability Act of 1996 (Ley HIPAA). El representante legal de la querellante le indicó y les informó a los funcionarios del Hospital, así como a su representante legal […], que las hojas clínicas de los pacientes que él produjo en la reunión de 20 de junio de 2022, no le habían sido entregadas por los testigos Nilda Rodríguez Vázquez[,] aquí demandante[,] ni por el otro testigo Alexander Santana Marrero, ya que él las tenía en su poder con antelación a la reunión.

16. **El día 19 de agosto de 2022, el Hospital despidió de su empleo como represalia a la demandante Rodríguez Vázquez, por su participación activa en la reunión de 20 de junio de 2022** que había sido ordenada por el Oficial Examinador del Departamento de Salud, cuyo propósito era el tratar de resolver la controversia entre las partes sin la necesidad de una vista administrativa. […].

17. Durante todo el proceso investigativo que inició el Hospital en contra de la demandante Nilda Rodríguez Vázquez y Alexander Santana Marrero por la participación de éstos en la reunión de 20 de junio de 2022, el representante legal de la querellante ante el Departamento de Salud le cursó dos (2) comunicaciones a funcionarios del Hospital indicándole que los documentos que él produjo en dicha reunión no le habían sido entregados por los testigos, y que Rodríguez Vázquez y Santana Marrero nunca habían tenido control de los documentos.

18. **El despido de la demandante Rodríguez Vázquez es uno injustificado y su único propósito es tomar venganza y represalias en contra de ésta por promover una Querella ante el Departamento de Salud contra el Hospital, por éste violar las disposiciones del Reglamento 9184 de dicha entidad gubernamental[,] y por comparecer a una reunión donde le fueron mostrad[a]s hojas clínicas de pacientes y por ella dar una explicación debido a su "expertise" del contenido de dichas hojas clínicas.**

19. Hay que señalar que la reunión de 20 de junio de 2022, ordenada por el Oficial Examinador[,] fue una privada y confidencial ni fue informado por la demandante Rodríguez Vázquez a terceras personas. **La alegación del Hospital[,] en la carta de despido a la demandante[,] de que supuestamente violó la Ley HIPAA, es simplemente una excusa para desalentar que los empleados participen en querellas en contra de su patrono.**

20. La querella NÚM. Q-22-03-004 (WR) a la que hacemos referencia fue resuelta por el Departamento de Salud. […].

21. **El despido de la demandante Nilda Rodríguez Vázquez constituye una violación a la Ley Núm. 115 de 20 de diciembre de 1991 sobre Represalia[s] y por tanto constituye un despido injustificado según las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976.**

22. La Ley 115 dispone estatutariamente los derechos de restitución en el empleo y de compensación doble al salario anual, entre otros.

23. La demandante Nilda Rodríguez Vázquez tiene derecho a una mesada de $60,000.00[,] aproximadamente, por haber sido despedida injustificadamente por haber trabajado con la parte demandada durante diecisiete (17) años, ya que comenzó en el empleo el 10 de enero de 2005, con un salario mensual de NUEVE MIL SETECIENTOS QUINCE DÓLARES ($9,715.00), según dispone la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA § 185, según enmendada.

24. **Debido a los actos de represalias por parte del Hospital Español Auxilio Mutuo contra la demandante Nilda Rodríguez Vázquez ha provocado que ésta haya sufrido daños emocionales, angustias mentales y daños económicos, sufriendo de insomnio, pesadillas, ansiedad, dolores de cabeza y depresión por los actos ilegales de su antiguo patrono aquí demandado**[,] lo que le ha causado daños por UN MILLÓN DE DÓLARES ($1,000,000.00)[,] más una suma igual adicional por dichos daños, según dispone la Ley Núm. 115, *supra*.

25. **La demandante Rodríguez Vázquez tiene derecho a recibir los daños aquí alegados, a que este tribunal ordene que sea repuesta en el empleo, se le paguen los haberes dejados de percibir, hasta el momento que sea repuesta en el empleo, y el lucro cesante prospectivo, y daños y perjuicios.** Además de una suma adicional igual por concepto de penalidad. (Énfasis suplido). Ap. del certiorari AC-2023-0109, págs. 24-29.

Como se puede apreciar, de un análisis, desinteresado y desapasionado, de las alegaciones hechas ante el Tribunal de Primera Instancia, tanto por el señor Santana Marrero, como por la señora Rodríguez Vázquez, clara y diáfanamente, se deriva lo siguiente: (1) el señor Santana Marrero y la señora Rodríguez Vázquez, alegadamente, fueron despedidos de sus empleos en el Hospital Auxilio Mutuo por su participación como testigos en cierto proceso administrativo celebrado ante el Departamento de Salud, relacionado con la Querella Núm.

Q-22-03-004, en contra de la referida institución hospitalaria, en el cual se cuestionaba la contratación de estudiantes de anestesia por parte del Hospital Auxilio Mutuo para que realizaran las funciones de un enfermero anestesista licenciado, ello en violación al Reglamento Núm. 9184; (2) como consecuencia de ello, este último y esta última instaron ante el foro primario sendas *Demandas*, por despido injustificado y represalias, en contra de la referida institución hospitalaria; (3) **las reclamaciones por despido injustificado y represalias incoadas por el señor Santana Marrero y la señora Rodríguez Vázquez, en contra del Hospital Auxilio Mutuo, son unas hechas al amparo, exclusivamente, de legislación laboral local, entiéndase, de la Ley Núm. 80-1976 y la Ley Núm. 115-1991;** y (4) **las acciones por despido injustificado y represalias incoadas por este último y esta última, ante el Tribunal de Primera Instancia, en contra de la referida institución hospitalaria no tienen el propósito de proteger los intereses del sindicato al cual pertenecen, entiéndase, la ULEES.**

Siendo ello así, coincidimos, tanto con el Tribunal de Apelaciones, como con el foro primario, en que las reclamaciones presentadas por el señor Santana Marrero y la señora Rodríguez Vázquez en contra del Hospital Auxilio Mutuo fueron unas estrictamente realizadas al amparo de la Ley Núm. 80-1976 y de la Ley Núm. 115-1991, **y en nada tenían el propósito de proteger los intereses del sindicato al cual pertenecen,** por lo que se trata aquí de un asunto sobre el cual el Tribunal de Primera Instancia tenía jurisdicción

sobre la materia y, en consecuencia, estaba llamado a atender el mismo. No se cometió, pues, a nuestro juicio, el error señalado.

V.

Por no ser esta la conclusión a la cual arribó una mayoría de este Tribunal, respetuosamente disentimos.


Ángel Colón Pérez
Juez Asociado