Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| HACIENDA LEALTAD INC., PERFECT CLEANING SERVICES INC., FRUTOS DE LAS MONTAÑAS DE LARES INC.; Y EDWIN N. SOTO RUIZ<br><br>Apelantes<br><br>V.<br><br>ELIEZER MOLINA PÉREZ, SHEILA MEJÍA LUCIANO Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS Y PABLO LEMUEL H/N/C "EL JANGUEO CORILLO"<br><br>Apelados | TA2025AP00487 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Sebastián<br><br>Caso Núm.: SJ2024CV01772<br><br>Sobre: Libelo, Calumnia o Difamación, Sentencia Declaratoria |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 16 de enero de 2026.

El 27 de octubre de 2025, compareció ante este Tribunal de Apelaciones, Hacienda Lealtad Inc., Perfect Cleaning Services Inc., Frutos de las Montañas de Lares Inc., y el señor Edwin N. Soto Ruiz (en adelante, parte apelante), mediante recurso de *Apelación*. Por medio de este, nos solicita que, revisemos la *Sentencia Parcial* emitida el 24 de septiembre de 2025 y notificada el 25 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Sebastián. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Desestimación* presentada por Eliezer Molina Pérez (en adelante, señor Molina Pérez o parte apelada) el 21 de diciembre de 2024. En consecuencia, desestimó las causas de acción interpuestas en contra del señor Pérez Molina.

Por los fundamentos que adelante se exponen, se *revoca* la *Sentencia Parcial* apelada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

**I**

Los hechos que suscitaron la controversia de epígrafe tienen su origen en una *Demanda* sobre sentencia declaratoria, difamación y daños y perjuicios instada el 21 de febrero de 2024, por Hacienda Lealtad, Inc., Perfect Cleaning Services Inc., Frutos de las Montañas de Lares, Inc., y el señor Edwin N. Soto Ruiz en contra del señor Eliezer Molina Pérez, su esposa Sheila Mejía Luciano y la Sociedad Legal de Gananciales compuesta entre ambos; y en contra del señor Pablo Lemuel h/n/c "El Jangueo Corillo".

En apretada síntesis, en la referida *Demanda* se alegó que, alrededor de septiembre de 2021 al presente, el señor Molina Pérez comenzó un patrón de publicaciones en distintas redes sociales atacando al señor Edwin N. Soto Ruíz ("el señor Soto") y sus empresas Hacienda Lealtad, Inc., y Perfect Cleaning Services Inc., donde falsamente y con conocimiento de su falsedad le atribuye al señor Soto: (i) fungir como "testaferro" o "prestanombre" para la compra y operación de su legítimo negocio turístico Hacienda Lealtad; (ii) recibir indebidamente créditos contributivos o "algún tipo de incentivo" relacionado a la industria de la agricultura; y (iii) permitir "alg[ú]n tipo de actividad con menores" en su finca; entre otros actos ilegales y/o indebidos.  A pesar de que el señor Molina Pérez conoce que dichas expresiones son falsas, continúa realizando su campaña de difamación en contra del señor Soto y mancillando la reputación comercial de las empresas demandantes de las cuales el señor Soto es presidente.

La parte apelante en su *Demanda* alegó, además, que su derecho a la honra, reputación e intimidad ha sido transgredido en

múltiples ocasiones debido a las publicaciones falsas, no corroboradas y negligentes de la parte apelada. Añadió que, las referidas publicaciones le han causado serios daños económicos, tanto a las entidades jurídicas apelantes, así como al señor Soto.

En la aludida *Demanda*, el señor Soto afirmó que es un empresario puertorriqueño oriundo de Lares, quien con su dedicación y esfuerzo logró fundar varios negocios, entre estos, Perfect Cleaning Services Inc., y Hacienda Lealtad Inc. Añadió que, a través de su carrera ha desarrollado una distinguida reputación en la industria de limpieza laborando para distintas empresas hasta el año 1996, cuando fundó Perfect Cleaning Services Inc. Alegó que, su pasión por la agricultura y su compromiso con el pueblo que lo vio nacer, lo ha llevado a enfocarse, a través de sus negocios, en el cultivo y distribución de frutos nativos bajo los estándares de calidad más altos en la industria de la agricultura donde ha desarrollado una significativa empleomanía en el pueblo de Lares.

Conforme surge de las alegaciones, el conglomerado de empresas del señor Soto emplea alrededor de cuatro (4) mil empleados puertorriqueños, siendo uno de los patronos más grandes de Puerto Rico. Puntualizó la parte apelante que, tanto el señor Soto en su carácter personal como sus empresas, cuentan con una reputación digna de un ciudadano trabajador quien goza de una gran estima y cariño por parte de sus familiares, amigos y la comunidad donde reside y realiza negocios.

El coapelante Soto, quien es una persona privada, alegó que, la parte apelada, sin contar con prueba alguna y con el propósito de obtener ganancias a través de las visitas a sus publicaciones, hizo expresiones difamatorias en las redes sociales para su beneficio personal a costa de mancillar sus derechos.

En lo que respecta a Hacienda Lealtad Inc. se alegó que, es una plantación de café histórica en el barrio La Torre, Lares, Puerto

Rico. Fue fundada en 1830, por Juan Bautista Plumey, un inmigrante francés y durante muchos años, Hacienda Lealtad fue reconocida a nivel internacional como un gran productor y exportador de café a Europa. En 1880, pasó a ser propiedad de Miguel Márquez Enseñat. El lugar tiene un valor sentimental para el señor Soto, un empresario puertorriqueño de Lares, que había recogido granos de café maduros allí cuando era niño, con su familia. En 2007, el señor Soto, a través de la entidad Frutos de las Montañas de Lares, Inc. decidió comprar la hacienda como una segunda casa.

Conforme se desprende de las alegaciones, si bien las intenciones iniciales del señor Soto para la propiedad eran mantenerla como una segunda casa, luego decidió conservarla por su importancia histórica y convertirla en un establecimiento ecoturístico, en el que se realizan varias actividades para el público en general y que cientos de familias visitan la hacienda y disfrutan de su valor histórico y natural. Se alegó, además, que dichas operaciones se realizan a través de Hacienda Lealtad Inc., quien no cuenta con beneficio contributivo alguno y/o "créditos contributivos", ni se dedica al negocio de la agricultura, lo cual es de fácil corroboración.

El señor Soto indicó que, de su propio pecunio, fruto de su esfuerzo y trabajo invirtió significativamente en su restauración y convirtió a la Hacienda Lealtad en un museo viviente con recorridos con cita previa, hotel, cafetería y recorridos educativos para turistas locales e internacionales, así como un lugar para que las personas de la industria agrícola y del café se reúnan y realicen talleres.

Se desprende de las alegaciones que, a partir del 18 de septiembre de 2009, bajo la presidencia del señor Soto, Hacienda Lealtad Inc., realiza sus operaciones al público según surge del Departamento de Estado de Puerto Rico.

En lo que respecta a Perfect Cleaning Services Inc. se alegó que, fue fundada el 15 de agosto de 1996 y se dedica primordialmente, al negocio de limpieza. La parte apelante afirmó que, a lo largo de los años, la empresa ha ganado una importante reputación comercial, posicionándose como una de las empresas líderes en Puerto Rico en la industria de limpieza.

En cuanto a las causas de acción reclamadas, la parte apelante afirmó que medió un patrón de difamación de parte del apelado Molina Pérez.  En lo particular, alegó y citamos:

[.....]

### D. Patrón de Difamación del Señor Molina

#### (i) La Actividad en el pueblo de Maricao

29. En o alrededor de Septiembre 22 de 2021, el señor Molina publicó un video mediante el cual realizó unas expresiones en una actividad en el pueblo de Maricao donde se encontraban presentes el Senador Tomás Rivera Schatz y el Secretario de Agricultura Ramón González, entre otros.

30. En el video, que fue publicado por la red social Facebook e Instagram de la cuenta del señor Eliezer Molina, se desprenden unas expresiones realizadas por este a los efectos de que denunció un "asalto a la agricultura" por parte de ciertas personas que a juicio del señor Molina "no se dedican a la agricultura" y reciben incentivos como créditos contributivos. A tales efectos identificó categóricamente al señor Soto, Hacienda Lealtad y Perfect Cleaning.

31. En la publicación categ[ó]ricamente señala a la finca Hacienda Lealtad como finca perteneciente al señor Edwin Soto, indicando que el negocio principal de este "es otra cosa que no es agr[í]cola, Perfect Cleaning".

32. En su publicación, el señor Molina increpó al secretario de Agricultura de porqué no se han investigado ciertos "créditos contributivos" otorgados al señor Soto y a la Hacienda Lealtad. Ello, a pesar de que es f[á]cilmente corroborable de que ni el señor Soto ni Hacienda Lealtad cuentan con créditos contributivos.

33. Dicha publicación es de suma importancia debido a que identifica al señor Edwin Soto como dueño de la empresa Hacienda Lealtad Inc., y Perfect Cleaning Services, Inc., y en

publicaciones posteriores hace alusión a dicho video para colocar al público general del contenido de sus expresiones. Por tanto, en el presente caso, aplica la doctrina de daños continuados.

34. A tales efectos, la publicación fue la siguiente:

"[O]tra cosa es que tenemos un asalto a la agricultura. Este asalto viene por muchas personas que no son agricultores y están recibiendo los incentivos y los beneficios que se supone que le toquen a todos ellos. Por ejemplo, tenemos una finca en Lares que se llama Hacienda Lealtad, de una persona que se llama Edwin Soto, que su negocio es otra cosa que no es agrícola, Perfect Cleaning. ¿El Departamento de Agricultura ha hecho algún análisis de los créditos contributivos, de los incentivos o beneficios que se le está dando a esta persona en particular, Secretario, pregunto?

[…]
¿Se ha hecho algún análisis de estas corporaciones que se les están otorgando los beneficios siendo ese su caudal primario? Por ejemplo, Hacienda Lealtad.
[…]
Pues se está excluyendo porque el señor de Perfect Cleaning, que no trabaja en la industria del café, (ininteligible) 200 cuerdas las pone a producir café, ¿y él va a cobrar cómo? Por producción. ¿Cierto o falso? Por volumen de producción. Estas personas tienen que darle capacidad de producir porque la realidad es que su ingreso primario no es el agrícola y esto es simplemente una recomendación. Si no lo quieren legislar, verdad, esos (ininteligible).

[…]
Como bien yo le dije ahorita al secretario, no sé si ustedes pudieran hacer algún tipo de legislación para que entonces se busquen en estas corporaciones que han creado grandes fincas en la (ininteligible) y si de alguna manera se pueda evitar que estas personas que nos buscan como mercado secundario acaparen todo lo que tenga que ver con agricultura y más aún, **se pudiera hacer alguna legislación para verificar si estas personas hicieron algún tipo de documento como un testaferro, y esas fincas no son de ellos, son de un ente externo que los utiliza para adquirir bienes inmuebles, me gustaría que me contestaran esa pregunta.** Y si el Senador, don Thomas Rivera Schatz está (ininteligible) ha escuchado la pregunta." Id.

35. De la anterior publicación, se desprende que el señor Molina al señor Soto: (i) fungir como "testaferro" o "prestanombre" para la compra y

> operación de su legítimo negocio turístico Hacienda Lealtad; (ii) Recibir indebidamente créditos contributivos o "algún tipo de incentivo" relacionado a la industria de la agricultura.
>
> 36. Dichas expresiones malintencionadas, falsas, negligentes, no corroboradas y difamatorias le han provocado daños a los Demandantes quienes a través de los años han cultivado su honra y reputación lo cual se ha visto mancillada ante la conducta antijurídica de la parte demandante.
>
> [.....]

Consecuentemente, la parte apelante, reclamó daños económicos, en una suma no menor de un millón de dólares ($1,000,000.00), más una suma adicional de doscientos mil dólares ($200,000.00), por concepto de sufrimientos y angustias mentales.

El 11 de marzo de 2024, la parte apelante enmendó la *Demanda,* a los fines de hacer constar que el 1ro. de marzo de 2024, el Departamento de Justicia notificó una carta al Honorable Senador Thomás Rivera Schatz, ordenando el cierre y archivo de una investigación iniciada a partir de las expresiones de Molina Pérez por falta de prueba.

El 1ro. de abril de 2024, la parte apelante acreditó el diligenciamiento del emplazamiento dirigido a la codemandada Sheila Mejía Luciano. Habida cuenta de que dicha parte no había contestado la demanda, el 4 de junio de 2024, la parte apelante interpuso *Solicitud de Anotación de Rebeldía* en cuanto a dicha codemandada. Asimismo, el 4 de junio de 2024, la parte apelante incoó *Moción Informativa y en Solicitud de Emplazamiento por Edicto,* mediante la cual, le solicitó a la primera instancia judicial que le permitiera emplazar al codemandado Eliezer Molina mediante edicto, toda vez que, este no había podido ser emplazado, a pesar de las gestiones efectuadas con tal propósito, según acreditadas mediante diligenciamiento negativo.

El 7 de junio de 2024, el foro *a quo*, le anotó la rebeldía a la codemandada Sheila Mejía Luciano.

Subsiguientemente, el 10 de junio de 2024, el foro primario le concedió 10 días a la parte apelante para someter el emplazamiento por edicto.

El 17 de junio de 2024, compareció la señora Mejía Luciano mediante *Moción en Solicitud de Autorización sobre Representación Legal.* En igual fecha, presentó *Moción en Solicitud de Levantamiento de Rebeldía y Solicitud de Desestimación con Perjuicio.*

Con posterioridad, el 21 de diciembre de 2024, la parte apelada presentó *Moción de Desestimación.* Acaecidas varias incidencias procesales, innecesarias pormenorizar, el 3 de marzo de 2025, la parte apelante presentó *Oposición a la Moción de Desestimación Presentada por Eliezer Molina Pérez.*

El Tribunal de Primera Instancia, emitió *Sentencia Parcial* el 24 de septiembre de 2025, en la cual declaró Ha Lugar a la *Moción de Desestimación* presentada por Eliezer Molina Pérez el 21 de diciembre de 2024. En consecuencia, desestimó las causas de acción presentadas en su contra.

Por otro lado, ese mismo día, 24 de septiembre de 2025, el foro *a quo* emitió *Sentencia* mediante la cual, dio por desistida, sin perjuicio, la reclamación en contra del codemandado Pablo Lemuel H/N/C "El Jangueo Corillo", por haber transcurrido en exceso el término reglamentario dispuesto por la Regla 4.3 de Procedimiento Civil[1], para diligenciar el emplazamiento.

Inconforme con la *Sentencia Parcial* emitida por el foro de primera instancia, la parte apelante presentó el recurso cuya revisión nos atiene y esgrimió los siguientes señalamientos de error:

---

[1] 32 LPRA Ap. V, R. 4.3.

**Primer Error:** Erró el Tribunal de Primera Instancia al concluir que varias reclamaciones por difamación estaban prescritas, sin considerar las doctrinas de daños continuados y sucesivos.

**Segundo Error:** Erró el Tribunal de Primera Instancia en su aplicación de la doctrina de hipérbole retórica.

**Tercer Error:** Erró el Tribunal de Primera Instancia en su aplicación de la excepción de la doctrina de "Of and Concerning".

**Cuarto Error:** Erró el Honorable Tribunal al No Considerar Ni Evaluar Adecuadamente la Doctrina de Difamación por Implicación.

Mediante *Resolución* emitida el 30 de octubre de 2025, concedimos término a la parte apelada para que se expresara en cuanto al recurso. En cumplimiento con lo ordenado, el 26 de noviembre de 2025, la parte apelada presentó *Alegato en Oposición de Parte Apelada*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos. *Argüello v. Argüello*, 155 DPR 62 (2001); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *SLG Rivera Carrasquillo v. AAA*, 117 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *SLG Rivera Carrasquillo*

*v. AAA,* supra*, pág. 356; Ortiz Ortiz v. Medtronic,* supra*, pág. 778, Pueblo v. Hernández Doble,* 210 DPR 850, 864 (2022)[2].

No obstante, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013)[3]. Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012); *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 435. Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *Íd.* citando a *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 658 (1997).

### B. Doctrina de Difamación, Libelo y Calumnia

Nuestro ordenamiento jurídico ha definido *difamación* como "desacreditar a una persona publicando cosas contra su reputación". En Puerto Rico se reconoce la acción de daños y perjuicios por difamación. Esta incluye, tanto el libelo como la calumnia. Para que proceda una acción de libelo se requiere que exista un récord permanente de la expresión difamatoria. La calumnia, por su parte, se configura con la mera expresión oral difamatoria. *Pérez Rosado v. El Vocero,* 149 DPR 427 (1999); *Ojeda*

---

[2] Véase también *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750 (2013).

[3] Véase, además, *Pueblo v. Rivera Montalvo,* 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle, Mejía,* 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

*Ojeda v. El Vocero,* 137 DPR 315 (1994). Según ha resuelto nuestro Tribunal Supremo, la doctrina de difamación consiste en dos vertientes, cada una con sus respectivas exigencias constitucionales, conforme la clasificación del demandante como funcionario o figura pública o como persona privada. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 147 (2013).

La protección contra expresiones difamatorias dimana de las Secciones 4 y 8 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico y de la Ley de Libelo y Calumnia, Ley del 19 de febrero de 1902, 32 LPRA secciones 3141-3149. *Meléndez Vega v. El Vocero de PR,* supra, pág. 147. La Sección 4 de la Constitución dispone que "no se aprobará ley alguna que restrinja la libertad de palabra o de prensa". La Sección 8, por su parte, establece que "toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar".

La Ley de Libelo y Calumnia, *supra,* estableció estatutariamente la acción de daños y perjuicios por libelo y calumnia. Su vigencia depende de que su aplicación no sea incompatible con las disposiciones constitucionales antes citadas, *Clavell v. El Vocero de P.R., Inc.,* 115 DPR 685 (1984), o con las interpretaciones judiciales que sobre la Primera Enmienda a la Constitución de Estados Unidos tenga a bien hacer el Tribunal Supremo de Estados Unidos. *Acevedo Santiago v. Western Digital Caribe, Inc.,* 140 DPR 452 (1996); *Villanueva v. Hernández Class,* 128 DPR 618 (1991).

En el caso *Ojeda v. El Vocero,* supra, nuestra Alta Curia señaló que, como la Ley de Libelo y Calumnia ha perdido gran parte de su importancia después de la aprobación de la Constitución del Estado Libre Asociado, los casos relacionados con este tema se deben resolver, como norma general, bajo la normativa de los daños y perjuicios extracontractuales. *Ojeda Ojeda v. El Vocero,* supra, pág.

326. Al palio de nuestra doctrina vigente, es a nuestro derecho al que se debe acudir para sopesar los intereses involucrados en un caso por difamación, toda vez que Puerto Rico tiene facultad para establecer sus normas de responsabilidad en casos de difamación siempre que no se imponga una responsabilidad absoluta, ni se reduzca el contenido de la Primera Enmienda de la Constitución federal. Por ende, en estos casos la jurisprudencia norteamericana solamente tiene valor persuasivo.

Posteriormente, en *Pérez v. El Vocero*, 149 DPR 427 (1999), nuestro Tribunal Supremo expresó que la fuente primaria de la protección contra injurias es la Constitución y que la Ley de 1902 sobrevive solamente en tanto y en cuanto es compatible con aquella. Así pues, se refirió a nuestro código de derecho privado para explicar que cuando la parte demandante es una figura privada, el grado de culpa requerido para que la persona demandada sea responsable por difamación es la negligencia.

La norma reiterada en nuestro ordenamiento jurídico es que para resolver estos casos corresponde recurrir al derecho privado recogido en nuestro Código Civil y a nuestra tradición civilista. Véase: *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127 (1974); *Valle v. American Inter. Ins. Co.*, 108 DPR 692 (1979); *Estremera v. Inmobiliaria Rac.*, 109 DPR 852 (1980); *Jiménez v. Pelegrina Espinet*, 112 DPR 700 (1982).

Por otra parte, se entiende por libelo la difamación que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación tendente a exponer a dicha persona al odio del pueblo o a su desprecio o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle o deshonrarle. 32 LPRA sección 3142.

Por otro lado, en las acciones por difamación se ha dispuesto la doctrina de *of and concerning the plaintiff*. Esta doctrina requiere que, en las acciones por difamación el demandante pruebe que las expresiones difamatorias se refieren a su persona de modo particular. *Soc. de Gananciales v. El Vocero de PR*, 135 DPR 122, págs. 128–129 (1994); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 224 (2013). Tal requisito limita el derecho a demandar por falsedad injuriosa, puesto que concede tal derecho a aquellos que son objeto directo de críticas, y lo niegan a aquellos que meramente se quejan por manifestaciones no específicas que creen que los perjudican. *Soc. de Gananciales v. El Vocero de PR,* supra, pág. 129 citando a *Blatty v. New York Times Co.*, 728 P.2d 1177 (Cal. 1986). La referida doctrina impide las reclamaciones por difamación vicaria y las reclamaciones por difamaciones instadas contra grupos de personas cuando el demandante no pueda probar haber sido señalado de forma individual, o sea, que se hizo una referencia específica contra su persona de forma particular y singularizada. *Íd.*; *Meléndez Vega v. El Vocero de PR,* supra, pág. 166.

Nuestra última instancia judicial ha dispuesto que, según la doctrina de *of and concerning the paintiff*, para prevalecer en una acción por difamación, el demandante, además de probar que cierta información publicada era de contenido difamatorio, también debe hacer la identificación de sí mismo como la persona difamada. *Soc. de Gananciales v. El Vocero de PR,* supra, pág. 129. Esta doctrina requiere que, la identidad del demandante surja diáfanamente de la publicación en cuestión. *Íd.* Asimismo, el Tribunal Supremo de Estados Unidos ha reconocido que esta doctrina, respecto a que la publicación sea sobre el demandante y relativa a este, goza de una dimensión constitucional. *Íd.*

El derecho en el ámbito de la difamación procura lograr un balance entre el derecho de estar protegido contra ataques a la

reputación y el derecho a la libre expresión. *Sociedad de Gananciales v. López*, 116 DPR 112 (1985). En un caso de libelo, el demandante debe demostrar que la información publicada es falsa y que por causa de su publicación sufrió daños reales. En el caso de una persona privada, debe probar, que la imputación fue hecha negligentemente, pero en casos en que estén envueltos funcionarios o figuras públicas, debe demostrar que la información fue publicada con malicia real o a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. *Pérez Rosado v. El Vocero*, supra; *Villanueva v. Hernández Class*, supra; *Torres Silva v. El Mundo*, 106 DPR 415 (1977).

## C. *Moción de Desestimación*

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Nilda Rodríguez Vázquez y otros v. Hospital Auxilio Mutuo*, 2025 TSPR 55, 215 DPR __ (2025); *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costas Elena y otros v. Magic Sports y otros*, 213 DPR 523, 533 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez et. al.*, 205 DPR 1043, 1065 (2020);

*Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Cuando se presenta una moción de desestimación al amparo de la Regla 10.2(5), la desestimación pretendida se refiere a los méritos de la controversia y no a los aspectos procesales del caso. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025).

Al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 533; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *BPPR v. Cable Media,* supra; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Luego, le corresponde determinar si, a base de los hechos aceptados como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 534. Si el Tribunal entiende que no se cumple con el estándar de plausibilidad, se debe desestimar la demanda, pues no debe permitir que proceda una reclamación insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Íd.* Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307.

Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[4] *Cobra*

---

[4] *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013*); López García v. López García*, 200 DPR 50, 69-70 (2018).

*Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez*, supra, págs. 267-268; *BPPR v. Cable Media*, supra; *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833. Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho. *Íd*; *BPPR v. Cable Media,* supra.

Nuestra más Alta Curia ha reiterado que, una demanda no deberá ser desestimada a menos que la razón para solicitar el remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia. *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a resolver.

**III**

En su comparecencia ante este foro revisor, la parte apelante nos plantea que el foro primario cometió cuatro errores, a saber, 1) al concluir que varias reclamaciones por difamación estaban prescritas, sin considerar las doctrinas de daños continuados y sucesivos; 2) en su aplicación de la doctrina de hipérbole retórica; 3) en su aplicación de la excepción de la doctrina de "*of and concerning*" y, 4) al no considerar ni evaluar adecuadamente la doctrina de difamación por implicación.

Al examinar ponderada y desapasionadamente el expediente ante nuestra consideración, colegimos que incidió el foro primario al desestimar sin más, en esta etapa de los procedimientos, la *Demanda* interpuesta por la parte apelante.  Nos explicamos.

En cuanto al primer señalamiento de error, el foro *a quo* concluyó en su sentencia desestimatoria que, la "posible causa de acción por la alegada publicación del 22 de julio de 2021, surgió

luego de que ocurrió la publicación." Si bien surge de la sentencia apelada que el término prescriptivo comenzó a discurrir desde que la parte demandante obtuvo conocimiento de la publicación y de que fue Molina Pérez quien la publicó, el juzgador de instancia asumió que, ello ocurrió a partir de efectuada dicha publicación. Consecuentemente, basó su determinación en lo que consideró una inferencia razonable, que no fue rebatida por la parte apelante.

Sobre este particular, el foro primario consignó lo siguiente:

La parte demandante alegó que el patrón de publicaciones difamatorias comenzó con una publicación el 22 de septiembre de 2021. Además, hizo formar parte de la demanda enmendada la transcripción de dicha publicación, en la cual se hizo constar la misma fecha. De modo que este tribunal puede inferir razonablemente que la parte demandante conoció del daño el mismo día de la publicación; sin embargo, la parte demandante no rebatió tal inferencia. La parte demandante no ha sostenido que conoció de la publicación en fecha posterior, sino que se limitó a argumentar que el término prescriptivo debe contarse a partir de la última publicación. Como se expusiera anteriormente, no le asiste la razón.

Los argumentos de la parte demandante en torno a la naturaleza digital de la alegada publicación difamatoria no persuaden a este tribunal; pues resultan contrarios a la regla de la publicación única adoptada por el Tribunal Supremo de Puerto Rico, la cual en el contexto de ediciones de periódicos, revistas o libros, ha concluido que se considera una sola publicación que da lugar a una sola causa de acción; mientras que la extensión del agravio, la distribución y circulación se consideran, más bien, elementos valorativos de daños. Véase *Díaz Segarra v. El Vocero*, 105 DPR 850 (1977). En vista de lo anterior, es forzoso concluir que la publicación del 22 de septiembre de 2021 es una instancia individual, así como el resto de las publicaciones, y cualquier posible causa de acción que pudiera surgir de esta está prescrita. Habiendo concluido de esta forma resulta innecesario tomar una determinación sobre el carácter difamatorio de esta publicación.

Por otro lado, por estar intrínsecamente relacionados, discutiremos los señalamientos de error segundo, tercero y cuarto de manera conjunta.

Como mencionamos previamente, la parte apelante nos plantea que, el foro primario erró en la aplicación de la doctrina de la hipérbole retórica, así como la doctrina de "*of and concerning*" y

la doctrina de difamación por implicación. Como parte de sus defensas, el apelado Molina Pérez levantó que, las expresiones en cuestión no eran difamatorias de su faz, sino que constituían, más bien, una opinión e hipérbole.

Sobre este particular, nos llama la atención que, a pesar de que el foro *a quo* indicó que, por haber concluido que cualquier posible causa de acción está prescrita, se hacía innecesario tomar una determinación sobre el carácter difamatorio de la publicación, seguidamente, procedió a consignar su interpretación de las expresiones de Molina Pérez.   En lo particular, concluyó que: "[l]o cierto es que estamos ante una expresión sobre cuestiones de interés público que no contienen una connotación fáctica que sea susceptible de ser probada como falsa. De esta publicación no surgen expresiones difamatorias, mucho menos que se refieran a personas en particular. De esta publicación no se desprende que Soto Ruiz, Perfect Cleaning o Hacienda Lealtad hubieran sido objeto directo de críticas, sino meras manifestaciones no específicas. Dicho esto, resulta evidente que la parte demandante no tiene una posible causa de acción disponible por esta primera publicación."

Por otro lado, el foro primario se refirió a cierto video publicado a mediados de enero de 2024, y concluyó que, en el mismo Molina Pérez tampoco publicó información de contenido difamatorio, ni contra Soto Ruiz, Perfect Cleaning o Hacienda Lealtad.

Por igual, el foro primario aludió a otro video publicado en enero de 2024, en el que Molina Pérez, en una reunión de agricultores en el municipio de Maricao, indicó que hacía un tiempo había comenzado a hablar sobre el término "testaferro", de la búsqueda de terceras personas para comprar propiedades a su nombre y de una finca. Molina Pérez levantó escenarios en los que en las fincas hubiera algún tipo de actividad con menores y que esos menores hubieran hablado con Molina Pérez. Aseveró que iban a

pagar por las lágrimas que derramaron esos menores y que conocía una serie de cosas relacionadas a la finca sin explicar lo que conocía de ellas. Molina Pérez comentó que, si se concretaba la venta de una finca por cierta cantidad, las autoridades debían verificar quién pagaría por esa finca a sobreprecio. Según las alegaciones de la demanda enmendada y la transcripción de este video, en este Molina Pérez insinuó que en la finca a la que hizo referencia hubo algún tipo de actividad con menores a los que le hicieron "derramar lágrimas". Puntualizamos que, respecto a las aludidas expresiones, el Juzgador de instancia señaló lo siguiente:

> Es decir, en algún sentido, Molina Pérez publicó información e imputó hechos que podrían tender al descrédito, ciertamente. Aparte de esta insinuación, no surgen expresiones que contengan una connotación fáctica que sea susceptible de ser probada como falsa o expresiones difamatorias.

En resumen, el foro primario concluyó mediante meras "inferencias rzonables" que, las posibles causas de acción de la parte apelante estaban prescritas. Esto es, aún no había concluido el descubrimiento de prueba ni la parte demandante había establecido su causa de acción mediante el desfile de prueba. Por otro lado, a pesar de que señaló que resultaba innecesario determinar el carácter difamatorio de las expresiones en controversia, resolvió sin más, que las mismas no eran difamatorias. Puntualizamos que, a pesar de que el foro primario reconoció que Molina Pérez publicó información e imputó hechos que podrían tender al descrédito, resolvió que: "Aparte de esta insinuación, no surgen expresiones que contengan una connotación fáctica que sea susceptible de ser probada como falsa o expresiones difamatorias."

Tal y como se desprende del propio dictamen apelado, así como del derecho previamente esbozado, nuestro Tribunal Supremo ha reiterado que para que proceda una moción de desestimación, *tiene que demostrarse de forma certera en ella que el demandante no*

*tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación,* aun interpretando la demanda lo más liberalmente a su favor".[5] Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho.

Nuestro Tribunal Supremo ha designado como valores superiores de la búsqueda de la verdad, la política judicial de que los casos sean ventilados en los méritos y el derecho de toda parte de tener su día en corte. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 215 (2023).

En consonancia con lo anterior, una demanda no deberá ser desestimada a menos que la razón para solicitar el remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia.[6]

En fin, en virtud del derecho previamente esbozado, colegimos que, el caso de marras no es susceptible de ser desestimado por insuficiencia de la prueba mediante la errónea aplicación de la Regla 10.2 de Procedimiento Civil, *supra.*

No podemos pasar por alto que, el caso se encuentra en una etapa relativamente temprana de los procedimientos, no ha concluido el descubrimiento de prueba y la parte apelante no ha tenido una oportunidad razonable de establecer su causa de acción mediante el desfile de prueba.

**IV**

Por los fundamentos que anteceden, se revoca la *Sentencia Parcial* apelada y se devuelve el caso al tribunal de Primera Instancia

---

[5] *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013*); López García v. López García,* 200 DPR 50, 69-70 (2018).
[6] *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150.

para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Por último, aclaramos que con nuestra determinación no estamos prejuzgando los méritos de la controversia en el caso de marras, ni pasamos juicio sobre el dictamen apelado.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones